**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALI J. FARHAT,

        Plaintiff,

       v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,
PRICEWATERHOUSECOOPERS
HEALTH AND WELFARE
BENEFIT PLAN,

        Defendants.

_____/

No. C 05-0797 PJH

**ORDER GRANTING DEFENDANTS'
MOTION FOR DISCRETIONARY
STANDARD OF REVIEW; DENYING
PLAINTIFF'S REQUEST FOR
DISCOVERY**

[REDACTED]

**INTRODUCTION**

      This is a case brought pursuant to the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001, et seq., challenging defendants' denial of payment of long-

term disability ("LTD") benefits.  Plaintiff Ali Farhat ("Farhat") was employed by

Pricewaterhouse Coopers' ("PWC") tax department for nearly twenty years.  Farhat was

insured under the PWC Plan, an ERISA plan, issued by Hartford Life ("Hartford").  Farhat

began receiving short-term disability benefits on April 21, 2003.  Thereafter, he applied for,

but was denied LTD benefits.  He challenges that denial in this case.  Defendants' motion for

a discretionary standard of review and plaintiff's request for discovery are currently before the

court.

United States District Court

For the Northern District of California

**BACKGROUND**[1]

**A.    Farhat's Medical History and Physicians**

[REDACTED]

**B.    Farhat's Benefits Application History**

Farhat received short-term disability benefits from April 23, 2003 until October 22, 2003, based on depression and anxiety.  In support of his short-term benefits application, Farhat submitted statements from treating physician Dr. Higgins, and Dr. Shuster, the psychologist whom he had been seeing.

In March 2004, after Farhat's short-term benefits expired, Farhat applied for long-term disability benefits ("LTD").[2]  With his LTD application, Farhat submitted statements from Dr. Smith, the orthopedic surgeon, and his treating physician, Dr. Higgins.  On his application, Farhat listed only Drs. Higgins, his HIV-treating physician, and Smith, his orthopedic surgeon, and other hospitals that had treated him for his back condition.  A.R. 547.  He did not list his psychologist, Dr. Shuster, as he had on the prior short-term benefits application.  Farhat noted "terrific pain – sedated" as the condition that prevented him from working.  A.R. 203.

On March 16, 2004, Hartford apparently contacted Farhat to clarify his condition. FN 016-17.[3]  Farhat allegedly told Hartford claims examiner, Sarah Gagliardi, that he was "trying to work through [the] major depression."  *Id.*  Farhat stated that he "didn't think" the depression would prevent him from returning to work.  *Id.*  Farhat further stated that he was optimistic that he would return to work, "but his doctor [was] not."  *Id.*

---

[1]Pursuant to this court's sealing order, this portion of the instant order has been redacted and is not made part of the public record.  *See* Civil L.R. 79-5.

[2]There appears to be some dispute regarding the basis for Farhat's LTD claim.  Hartford contends that it was based on a back injury and back surgery, and that Farhat informed Hartford that he was no longer disabled from depression.  Hartford further argues, that at the time of Farhat's LTD claim, he was not being treated for disabling HIV (and that if he was, he did not notify Hartford of that fact).  Farhat, however, contends that it was based on the back condition in addition to HIV-related conditions, including cognitive difficulties and depression.

[3]Documents labeled FN 0001- FN 020 were attached to the Administrative Record in this case.  Like defendants, the court refers to those documents by "FN."

United States District Court

For the Northern District of California

1    The next day, on March 17, 2004, Hartford notified Farhat that it had received his LTD

2    application.  A.R. 553.  It also noted that it had requested Farhat's medical records from the

3    hospitals treating his back injury, and from Dr. Smith, Dr. Higgins, and Dr. Shuster.  *Id.*  On

4    April 21, 2004, Dr. Shuster, Farhat's former psychologist, submitted her treatment notes to

5    Hartford at its request.  A.R. 161-71.

6         On May 4, 2004, Hartford approved LTD benefits from October 22, 2003, the

7    expiration date of Farhat's short-term benefits, until April 4, 2004.  Hartford, however, denied

8    benefits beyond April 4, 2004, noting that Farhat failed to provide sufficient proof of loss to

9    support a disability beyond that date.  A.R. 418-419.  In conjunction with its denial, Hartford

10   noted that:

11        The most recent medical information that we have on file is the Attending
          Physician's Statement of Disability completed by Dr. Taylor Smith, dated March

12        4, 2004.  Dr. Smith indicates that you underwent surgery for a herniated disc on
          February 4, 2004.  Dr. Smith indicated on the form that your condition was

13        recovered, and that your restrictions would only last through April 4, 2004.  As
          such, your LTD benefits are approved through April 4, 2004.  At this time we find

14        that you have failed to provide Proof of Loss, as required by the policy, to
          support that you remained disabled beyond April 4, 2004.  As such, benefits

15        beyond April 4, 2004 have been denied and your LTD has been closed.

16   *Id.* at 418.

17        Hartford further advised Farhat that if he did

18        remain disabled beyond April 4, 2004, [an enclosed] Attending Physician's
          Statement of Disability must be completed by the physician who is currently

19        treating you for your disabling condition.  If you'd like this information
          considered, we must receive it as soon as possible.

20
     *Id.* at 419.
21
          On November 4, 2004, Farhat submitted an appeal of Hartford's denial, and requested
22
     an extension of time to supplement the appeal, which Hartford granted.  A.R. 109-110.  In that
23
     appeal, Farhat's attorneys attached the June 18, 2003 Attending Physician Statement of
24
     Disability from Dr. Higgins in support of Farhat's LTD claim.  In that statement, Dr. Higgins
25
     opined that Farhat was unable to work due to lack of focus, memory loss, and perseveration
26
     associated with HIV.  Farhat contended in his appeal that nothing had changed since Dr.
27
     Higgins' completion of the statement, and that Hartford appeared to have ignored the
28

3

**United States District Court**

For the Northern District of California

1  evidence in conjunction with its denial of Farhat's LTD application.

2        Meanwhile, as noted above, in November and December 2004, Farhat underwent

3  cognitive testing by Dr. Horstman, a board-certified neuropsychologist.  Dr. Horstman

4  administered the Wechsler Adult Intelligence Scale ("WAIS") on Farhat.  The results revealed

5  mental slowing as a result of Farhat's HIV infection.  Additionally, the tests showed that Farhat

6  had some psychomotor slowing.  Dr. Horstman concluded that Farhat had suffered permanent

7  brain damage as a result of the infection, and that "the idea, let alone reality, of meeting the

8  demand characteristics of [Farhat's] customary and normal work duties in a timely fashion has

9  been, and will remain, outside of the boundaries of his functional capacity."  A.R. 375.  Dr.

10  Horstman further opined that Farhat's disability was not due to depression or anxiety.  Rather,

11  the depression and anxiety Farhat experienced were related to the cognitive deficits caused

12  by the HIV infection.

13        On January 3, 2005, Farhat submitted his appeal supplement.  The supplement

14  included a forty-page opinion letter from Dr. Horstman, the neuropsychologist, explaining why

15  Farhat was unable to work.  Additionally, Farhat included the December 2004 letter from his

16  treating physician, Dr. Higgins, stating that Farhat

17       has continued loss of cognitive function, problem solving, memory, etc.  Mr.
     Farhat now suffers from HIV dementia complicated by chronic and severe

18       depression.  I feel that Mr. Farhat continues to remain completely disabled.

19  A.R. 333.  Farhat also submitted his own declaration, which detailed the effects that HIV had

20  had on his ability to work.  A.R. 119-123.

21        In his supplemental appeal, Farhat argued that he had been unable to perform the

22  requirements of his job as tax director since April 22, 2003, the inception of his short-term

23  benefits.  He argued that in considering his LTD application, Hartford had evidence before it

24  from Dr. Higgins, his treating physician, that as of June 18, 2003, Farhat was unable to work.

25  Farhat asserted that

26       [d]espite having this information Hartford failed to request an updated APS from
     Mr. Farhat's treating physician [Dr. Higgins].  Rather, Hartford contacted Mr.

27       Farhat's therapist [Dr. Shuster] and concluded that because Mr. Farhat was not
     seeing her at the time, there was no evidence that he was disabled due to

28

United States District Court

For the Northern District of California

1    depression.

2    A.R. 80.  Accordingly, Farhat argued that Hartford, in conjunction with his LTD application,

3    improperly failed "to consider whether Mr. Farhat was disabled by his primary medical

4    condition and related impairments – HIV-related cognitive difficulties."  *Id.*

5        On January 4, 2005, Hartford informed Farhat that it would "begin the appeal process"

6    and acknowledged that under ERISA, it had forty-five days to make its decision.  Hartford,

7    however, did not deny Farhat's appeal until March 8, 2005, sixty-three days later.  In its denial

8    letter, Hartford concluded that "Mr. Farhat's physicians ha[d] not submitted documentation of

9    ongoing treatment for a condition that [sic] would prevent him from working."  A.R. 41.  In

10   support, Hartford noted:

11       In order to make a determination of disability status, information is required from
         Mr. Farhat's attending physicians to assess his ability to perform the essential
12       functions of any occupation.  Addressing the question of disability requires a
         concise understanding of his occupational functioning.  It is not sufficient for Mr.
13       Farhat's physicians to merely list symptoms as though they inherently imply a
         certain level of functional impairment or to certify disability without providing
14       medical evidence supporting his or her opinion.

15   *Id.*  Hartford concluded that the December 2004 letter from Farhat's treating physician, Dr.

16   Higgins, did "not document any medical treatments, test results or exam findings that would

17   substantiate Mr. Farhat's ongoing disability beyond April 4, 2004."  A.R. 42.  Hartford

18   asserted that "[w]hile this is Dr. Higgins' opinion, there is no medical information to support

19   these statements."  *Id.*

20       Hartford concluded that "the documentation in Mr. Farhat's file, taken as a whole, [did]

21   not indicate that his condition would prevent him from performing his occupation."  *Id.*

22       Farhat filed his complaint in this case on February 24, 2005.  On August 4, 2005,

23   defendants Hartford and PWC filed the instant motion for determination of the standard of

24   review of Hartford's denial and in opposition to Farhat's anticipated request for discovery.

25   Farhat filed an opposition, defendants filed a reply, and Farhat filed a surreply and motion for

26

27

28

1 leave to file a surreply.[4]

2 **DISCUSSION**

3 There are four issues before the court with respect to defendants' motion for a

4 discretionary standard of review:

5 (1) whether the PWC plan documents confer discretion on Hartford;

6 (2) whether Hartford's alleged untimeliness in deciding Farhat's request for review

7 precludes a discretionary standard of review;

8 (3) whether California law invalidates discretionary review clauses; and

9 (4) whether Hartford's alleged conflict of interest precludes a discretionary standard

10 of review.

11 **I.    The PWC Plan Conferred Discretion on Hartford**

12 "When a plan administrator's denial of benefits is challenged under ERISA, the default

13 rule holds that the court review the administrator's denial *de novo*, 'unless the benefit plan

14 gives the administrator or fiduciary discretionary authority to determine eligibility for benefits

15 or to construe the terms of the plan.'" *Abatie v. Alta Health & Life Ins. Co.*, 421 F.3d 1053,

16 1059 (9th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

17 (1989)).

18 The standard of review depends on whether the "plan documents unambiguously say in

19 sum or substance that the Plan Administrator or fiduciary has authority, power, or discretion to

20 determine eligibility or to construe terms of the Plan." *Abatie*, 421 F.3d at 1059 (quoting

21 *Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir. 2000)).  "Although

22 the plan must effectively grant the administrator discretion in interpreting the plan or

23 determining eligibility, there is no requirement that the word 'discretion' be used." *Id.*

24 Here, Farhat contends that Hartford has not pointed to any plan document in which

25 PWC grants discretion to Hartford, and that, for that reason, *de novo* review is appropriate.

26

27 ─────────────────

28 [4]Although the court ordinarily does not consider surreplies, the court GRANTS plaintiff's motion for leave to file the surreply and has considered it in conjunction with the instant motions.

6

**United States District Court**
For the Northern District of California

Farhat, however, is mistaken.  It is clear that PWC's plan grants such discretion to Hartford.

The summary plan description provides:

> [PWC] is the Plan Administrator and has full responsibility, discretion, and authority to determine the Plan.  Hartford Life . . ., the insurer and claim fiduciary, has been delegated full responsibility and authority to interpret all provisions of the Plan, which relate to the amount or eligibility for benefits under the Plan and to adjudicate claims according to its interpretation of the Plan.  Hartford Life's interpretation will be final, including handling of all appeals related to claims determinations.

A.R. 286.

This provision more clearly conveys discretion on Hartford than a similar provision in which the Ninth Circuit held that it was "readily evident" that an employer's plan granted such discretion.  *See Abatie,* 421 F.3d at 1059.  In *Abatie*, the Ninth Circuit held that similar plan language granting "responsibility for full and final" determinations as to eligibility conferred discretion under the plan.  *Id.*

Accordingly, this court concludes that Hartford had discretion under the plan according to the plan's language.

## II.   Hartford's Untimeliness in Deciding Farhat's Appeal does not Result in a *De Novo* Standard of Review

Farhat also argues that Hartford's benefit decision was untimely, based on ERISA regulations, thereby creating a "deemed denial" for which no deference may be afforded, thus requiring a *de novo* standard of review.

ERISA requires plans to provide participants with the opportunity for full and fair review of the denial in accordance with regulations promulgated by the Secretary of Labor.  *See* 29 U.S.C. § 1133(2).  Farhat argues that Hartford's failure to comply with the timeliness regulation precludes discretionary review.

Farhat's argument has, however, been foreclosed by the Ninth Circuit in *Gatti v. Reliance Standard Life Ins. Co.,* and his attempts to distinguish *Gatti* are unpersuasive.  415 F.3d 978, 981 (9th Cir. 2005).  The claimant in *Gatti* argued that the insurer's failure to timely review his appeal prevented the district court from applying a discretionary standard of review

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   as afforded by the plan in that case.  *Id.*  In *Gatti*, the applicable regulations provided the

2   administrator with a sixty-day time limit for making a decision on review.  *Id.* (citing 29 C.F.R.

3   § 2560.503-1(h)).  If a decision had not been made within that time limit, then the claim was

4   "deemed denied on review."  *Id.*  The district court in *Gatti* held that the insurer's decision

5   should be reviewed under a *de novo* standard because "the termination of Gatti's benefits

6   was not an act of discretion because Gatti's claim was 'deemed denied' when [the insurer]

7   violated the time deadlines for processing administrative appeals established in the ERISA

8   regulations."  *Id.* at 981.

9          The Ninth Circuit reversed.  It rejected the argument that "once a benefits administrator

10   . . . violated the regulation's time limitation, the 'deemed denied' language operate[d] to cut

11   off the administrator's discretion, making *de novo* review appopriate."  *Id.* at 983.  Instead, the

12   court "read the 'deemed denied' language to provide beneficiaries with a 'final decision' from

13   which to appeal if the administrator has not made a decision within the timelines established

14   by the regulation."  *Id.*  As support for its interpretation that the 'deemed denied' language

15   "allow[ed] claimants to seek judicial review, rather than to cut off an administrator's discretion,"

16   the court noted subsequent amendments to the applicable regulation.  *Id.* at 983-84.  The

17   court noted that the amended regulation omitted the 'deemed denied' language, and replaced

18   it with 'deemed to have exhausted' language.  *Id.*  The court inferred that one of the agency's

19   purposes for the amendment was to assure that claimants have the ability to take their claims

20   to court without undue delay – as opposed to changing the standard of review.  *Id.* at 984.

21          Here, both parties agree that the applicable regulations are those in effect for claims

22   filed after January 1, 2002 – the amended regulation that the Ninth Circuit noted in support of

23   its decision in *Gatti*.  Under the current regulations, Hartford was required to decide Farhat's

24   request for review in 45 days.  *See* 29 C.F.R. § 2560.503-1(i)(3)(I).  Moreover, as noted

25   above, the current regulations replace the 'deemed denied' language, and provide in pertinent

26   part:

27          A claimant shall be deemed to have exhausted the administrative remedies
           under the plan and shall be entitled to pursue any available remedies under

28

8

United States District Court

For the Northern District of California

1    section 502(a) of the Act on the basis that the plan has failed to provide a
2    reasonable claims procedure that would yield a decision on the merits of the
     claim.

3    29 C.F.R. § 2650.503-1(l) (2002).

4        Farhat argues that the fact that the amended regulation actually applies here provides

5    a basis for distinguishing his case from *Gatti*.  Farhat further dismisses the Ninth Circuit's

6    reasoning in *Gatti* as dicta.

7        This court, however, concludes that *Gatti* is controlling and applicable to this case.  In

8    *Gatti*, the Ninth Circuit explicitly utilized the language in the regulation applicable here as

9    support for its holding that the standard of review was not altered by the insurer's failure to

10   comply with the deadlines set forth in the regulation.  *Id.* at 983-84.  Moreover, the *Gatti* court

11   went even further.  It held that generally, "procedural violations of ERISA do not alter the

12   standard of review unless those violations are so flagrant as to alter the substantive

13   relationship between the employer and employee, thereby causing the beneficiary substantive

14   harm."  *Id.* at 985.  Farhat has shown no such violations or substantive harm.

15       For these reasons, the court rejects Farhat's arguments on this issue.

16   **III.    California's DOI Notice does not Alter the Discretionary Standard of Review**[5]

17       Farhat also argues that the plan's discretionary clause is unenforceable, and that this

18   court must apply a *de novo* standard of review based on a February 27, 2004 notice issued

19   by the California Department of Insurance ("DOI notice").  In that notice, the DOI withdrew its

20   approval of discretionary clauses in disability insurance policies that "purport to confer on the

21   insurer discretionary authority to determine eligibility for benefits and to interpret the terms and

22   provisions of the policy."  *See* Exh. 1.

23       Farhat and the defendants agree that the DOI notice applies prospectively only.  If this

24   is the case, then defendants are correct that the February 27, 2004 DOI notice does not affect

25   Farhat's case because the PWC Plan at issue here was effective on July 1, 1999.

26

27       [5]Defendants' objections to the unpublished cases and authorities attached to the Kennedy-
28   Wilkins declaration submitted by Farhat are SUSTAINED.

9

However, the court need not reach this issue.  As the Central District recently noted in *Lundquist v. Continental Casualty Co.*, "[v]irtually every court that has addressed the California DOI's Notice and its impact on the standard of review in ERISA cases has rejected the argument that the Notice entitles plaintiffs to a *de novo* standard of review."  2005 WL 2482547 at *15 (C.D. Cal. Sept. 30, 2005); *see also Moskowite v. Evern Capital Corp.*, 2005 WL 1910941 at *5 (N.D. Cal. 2005); *Williston v. Norwood Promotional Products, Inc.*, 2005 WL 1877136 at *6-7 (C.D. Cal. 2005); *Davison v. Hartford Life and Accident Ins. Co.*, 2005 WL 807045 at *1 (N.D. Cal. 2005); *Mitchell v. Aetna Life Ins. Co.*, 359 F.Supp.2d 880, 888-89 (C.D. Cal. 2005); *Toth v. Automobile Club of California LTD*, 2005 WL 1877150 at *23-27 (C.D. Cal. 2005); *Horn v. Provident Life & Accident Ins. Co.*, 351 F.Supp.2d 954 (N.D. Cal. 2004); *Firestone v. Acuson Corp. LTD*, 326 F.Supp.2d 1040, 1049-51 (N.D. Cal. 2004).

The reasoning behind such a conclusion is persuasive.  The United States Supreme Court has approved of the use of discretionary clauses in insurance policies, noting that "a denial of benefits [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone*, 489 U.S. at 115.

Accordingly, the court concludes that the DOI notice did not alter the standard of review to be applied in this case, and need not reach the preemption issues raised by defendants.

**IV.   A *De Novo* Standard of Review is not Required as a Result of Hartford's Alleged Conflict of Interest**

Farhat argues that the record contains evidence that Hartford's decision was tainted by a financial conflict of interest.  Specifically, Farhat claims that this evidence falls into five categories: (1) that Hartford failed to administer Farhat's claim in accordance with the terms of the plan; (2) that Hartford failed to provide a proper notice of the claim denial; (3) that Hartford gave inconsistent reasons for its claim denial; (4) that Hartford ignored the medical evidence; and (5) that Hartford administered Farhat's claim as an adversary.

The discretionary standard of review is affected only when there is a serious conflict of

**United States District Court**
For the Northern District of California

1   interest.  *Abatie*, 421 F.3d at 1061 (citing *Jordan v. Northrop Grumman Corp. Welfare*

2   *Benefit Plan*, 370 F.3d 869, 876 (9th Cir. 2004)).  While an insurer's "dual role as

3   administrator and funding source gives rise to an apparent conflict of interest," it "does not

4   automatically remove the deference normally accorded to ERISA administrators."  *Id.* (citing

5   *Lang v. Long-Term Disability Plan*, 125 F.3d 794, 797 (9th Cir. 1997)).

6         "To prove that a serious conflict of interest exists, and to override a plan's

7   unambiguous conferral of discretion to the plan administrator, the plaintiff must provide

8   material, probative evidence, beyond the mere fact of the apparent conflict, tending to show

9   that the fiduciary's self-interest caused a breach of its fiduciary obligations to the beneficiary."

10  *Id.*  "If the plaintiff satisfies this burden, *de novo* review is appropriate if the administrator fails

11  to produce evidence to show that the conflict of interest did not affect the decision to deny

12  benefits."  *Id.*

13        Although Farhat has raised five arguments in support of his claim that there was a

14  serious conflict of interest, these can be distilled into essentially three arguments:

15        (1)    that Hartford improperly ignored documents in his appeal that Farhat continued

16               to be treated for HIV and that his cognitive impairments were not susceptible to

17               any treatment; and

18        (2)    that Hartford improperly rejected his treating physician, Dr. Higgins' opinion that

19               he was disabled; and

20        (3)    Hartford's reasons for his denials were inconsistent.

21  **A.    Hartford Allegedly Ignored Evidence**

22        Farhat contends that Hartford improperly ignored documents in his appeal that he

23  continued to be treated for HIV and that his cognitive impairments are not susceptible to any

24  treatment.  Farhat claims that this was in contradiction to the plan's requirement that Hartford

25  "take into account all comments, documents, records, and other information submitted by the

26  insured relating to the claim."

27        Specifically, Farhat argues that Hartford ignored Dr. Higgins' charts and lab notes and

28

United States District Court
For the Northern District of California

1   his statements regarding Farhat's disability.  Farhat also argues that Hartford ignored

2   neuropsychologist, Dr. Horstman's forty-one page report in its entirety.  Farhat notes that

3   neuropsychological testing is an accepted method of assessing an individual's cognitive

4   impairments.  Farhat contends that Hartford's failure to mention Dr. Horstman's letter

5   "demonstrates that Hartford was simply fishing for any pretext to deny Farhat's claim" and was

6   evidence of its lack of objectivity.

7           Hartford counters that there was no mention of Farhat's disabling HIV anywhere in the

8   record until Farhat's administrative appeal of Hartford's denial in January 2005. With respect

9   to Dr. Higgins' reports, defendants contend that they did not ignore the reports.  Instead, they

10  dispute the content and import of Dr. Higgins' pre-December 2004 reports.  They contend that

11  Higgins' reports *do not* state that Farhat was unable to work as a result of disabling HIV.

12          With respect to Dr. Horstman, it is undisputed that defendants did not mention the forty-

13  one page report in their denial of Farhat's appeal.  However, defendants contend that the fact

14  that they did not mention the letter does not mean that they ignored it.  They further note that

15  Horstman's letter was prepared over a year after Farhat stopped working, and that he

16  evaluated Farhat for the first time on November 24, 2004.

17          The court concludes that Farhat has not presented sufficient material, probative

18  evidence that Hartford violated its internal procedures in its treatment of Dr. Higgins' and

19  Horstman's opinions and reports.  It is true that "a plan administrator's failure to follow its

20  internal procedures for denying benefit claims is evidence that the administrator acted

21  because of a conflict of interest."  *Hensley v. Northwest Permanente*, 258 F.3d 986, 996 (9th

22  Cir. 2001) (citing *Friedrich Intel Corp.*, 181 F.3d 1105, 1109 (9th Cir. 1999) (concluding that

23  there were procedural irregularities in initial claims process and unfair appeals process)).[6]

24  However, Hartford's plan required that it "take into account" the various medical opinions.  It

25

26          [6]  Farhat also claims that Hartford failed to decide his appeal within the time period set
        forth by the plan.  Farhat does not, however, explain what that time period is.

27  Farhat also contends that Hartford's denial letter set forth the incorrect definition of disability.
    However, this does not appear to the court to be the case.

28

                                              12

United States District Court

For the Northern District of California

1    did not require that it specifically refute Dr. Horstman's letter.  This case is unlike those in

2    which the Ninth Circuit has found a conflict of interest based on a plan administrator's failure to

3    follow its internal policies.  *See Friedrich*, 181 F.3d at 1110 (concluding that Intel failed to

4    provide a full and fair appeals process where it did not provide the claimant with notice that he

5    must apply for benefits and the criteria for benefits determinations before denying him LTD

6    benefits).

7          Nor can this court conclude that Hartford's treatment of Dr. Higgins' opinions and

8    reports was in contravention of Ninth Circuit law.  The record clearly establishes that Hartford

9    did not *ignore* Higgins' opinions.  Instead, it disagreed with Farhat's characterization of his

10   opinions, and also *rejected* Higgins' opinions.  This issue is addressed below.

11         However, as noted, there is no dispute that Hartford failed to even acknowledge Dr.

12   Horstman's December 2004 letter in its March 2005 denial of Farhat's appeal.  This presents

13   a closer call for the court.  "[A] plan administrator's failure to discuss non-dispositive evidence

14   does not constitute material, probative evidence the fiduciary's self-interest has led to a

15   breach of its fiduciary obligations."  *Abatie*, 421 F.3d at 1062.  "[W]hen an administrator

16   arbitrarily refuses to credit a claimant's reliable evidence, heightened review may be called

17   for, but only if the administrator's decision as a whole is without a reasonable basis."  *Id.* at

18   1064 (citing *Jordan*, 370 F.3d at 879).  The "necessary predicate to launch such an inquiry is

19   to ask whether the piece of evidence at issue is highly reliable, and even if it were, the

20   decision's failure to mention that evidence must be arbitrary, all of which led to a decision that

21   was without a reasonable basis."  *Id.*

22         Here, Dr. Horstman's report can not be characterized as non-dispositive.  To the

23   contrary, the report detailed a battery of tests that Dr. Horstman administered to Farhat, and a

24   well-documented, well-supported conclusion that Farhat was unable to work based on his HIV-

25   related conditions.

26         Nevertheless, Ninth Circuit law is extremely deferential to the decisions of plan

27   administrators.  The court has held that "where an ERISA administrator states that it

28

13

United States District Court

For the Northern District of California

1  considered the record '*as a whole*,' [the court] must assume that it did so, in the absence of

2  clear and convincing evidence to the contrary." *Id.* at 1063 (emphasis added).  Here, Hartford

3  indeed stated in its March 2005 denial letter that "the documentation in Mr. Farhat's file, *taken*

4  *as a whole*, does not indicate that his condition would prevent him from performing his

5  occupation."  A.R. 42.  Farhat has not presented clear and convincing evidence demonstrating

6  that Hartford did not consider the record as a whole.

7       Accordingly, Farhat has failed to meet his burden to show a conflict of interest on this

8  ground.

9       **B.    Hartford's Alleged Improper Rejection of Evidence**

10      Farhat also contends that Hartford improperly rejected Dr. Higgins' opinions "out of

11  hand."  Farhat argues that this was contrary to Ninth Circuit law and the plan's provision that

12  Hartford will "consult with a medical professional having the appropriate training and

13  experience in the field of medicine involved in the medical judgment."

14      Farhat argues that Hartford failed to explain how Dr. Higgins' December 2004 opinion

15  was not sufficient "medical information." He contends that the claim record clearly documents

16  that as early as June 2003, Dr. Higgins, was of the opinion that he was disabled due to

17  decreased cognitive functioning.  According to Farhat, it was not, as Hartford implies, a newly

18  fabricated diagnosis.  Farhat notes that while Hartford characterized Farhat's short-term

19  disability and initial period of long-term disability as being based on "depression," Dr.

20  Higgins' June 2003 report stated that Farhat was impaired due to "no focused attention ability,

21  memory loss, and perseveration."

22      Farhat asserts that the fact that he later became disabled by an intervening back injury

23  did not change the fact that he was previously disabled by his HIV-related conditions.  Farhat

24  argues that once he recovered from his back injury, his HIV-related impairments remained.

25  According to Farhat, Hartford's choice to, in essence, assume that Farhat's HIV had been

26  cured by spinal surgery is probative evidence of the influence of its conflict of interest.

27       Hartford counters that Dr. Higgins' pre- 2004 records do not state that Farhat's HIV is

28

14

United States District Court

For the Northern District of California

1    disabling.  Instead, they argue that his records establish that Farhat's HIV was stable and that

2    Farhat was not being treated for any HIV-induced impairment.  Hartford also relies on a

3    conversation it claims to have had with Dr. Higgins in September 2003 in which Dr. Higgins

4    allegedly stated that Farhat was mostly limited by his depression and anxiety, and that the

5    physical symptoms of the HIV were not limiting.  FN 020.[7]

6

7         Hartford contends that Dr. Higgins' December 2004 letter was conclusory, and not

8    supported by his prior medical records.  Moreover, Hartford argues that a diagnosis alone

9    does not equate to a disability**.**

10        As noted, there is clearly a dispute among the parties regarding the content and import

11   of Dr. Higgins' pre-December 2004 opinions and records.  However, Farhat has not

12   demonstrated by sufficient material evidence that this dispute indicates a conflict of interest.

13   Such disputes are inevitable among parties in these types of cases.  Moreover, review of the

14   record does not indicate that the dispute was unreasonable, or sufficient to alter the standard

15   of review in this case.

16        Unlike social security cases, the law is clear that in ERISA cases, plan administrators

17   are *not* required to accord any special deference to the opinions of a claimant's treating

18   physician – in this case, Dr. Higgins.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822,

19

20        [7]Farhat addresses these statements in his surreply.  He argues that Hartford's decision
     to base its denial on hearsay is improper and provides further evidence of its conflict of interest.
21   Farhat further argues that a review of the statements reveals that they actually support Farhat's
     claim that he suffered from HIV-related cognitive impairments during his entire period of disability.
22

         The court is not persuaded by Farhat's argument.  First, there is sufficient record evidence
23   – aside from this September 2003 conversation – that supports Hartford's decision.  Second, the
     court is able to draw its own conclusions regarding the appropriate characterization of Dr.
24   Higgins' conversations with the Hartford associate.  According to the record, on September 12,
     2003, Dr. Higgins stated:
25

         [Farhat] is mostly limited by his depression/anxiety, and that the physical side
26       effects associated with HIV are not limiting, but psych [sic] prevents him from
         following thru [sic] on things, gets agitated and tangential in his thought process.
27

28   FN 020.

United States District Court

For the Northern District of California

1   829-831 (2003) (rejecting Ninth Circuit holding that plan administrator must articulate specific

2   reasons for rejecting a treating physician's opinion); *Jordan*, 370 F.3d at 878-79.  "Nor does

3   [ERISA] impose a heightened burden of explanation on administrators when they reject a

4   treating physician's opinion."  *Id.*  Instead, a treating physician's opinion "can be rejected on

5   the basis of reliable evidence with no discrete burden of explanation."  *Id.*

6        For these reasons, the court rejects Farhat's arguments for a heightened standard of

7   review on these grounds as well.

8        **C.**    **Hartford's Alleged Inconsistency**

9        Farhat also contends that Hartford's statement in its March 3, 2005 denial of his claim

10  that his "physicians have not submitted documentation of ongoing treatment for a condition

11  which would prevent [Farhat] from working," A.R. 41, was inconsistent with Hartford's prior

12  recognition that Farhat had been consistently treated by Dr. Higgins.  Farhat also claims that

13  Hartford's requests for information were inconsistent with its later admonition that it needed

14  additional information.

15       "[I]nconsistencies in a plan's handling of a benefits claim has been held to constitute

16  evidence that the administrator's decision was tainted by self-interest."  *Hensley*, 258 F.3d at

17  996 (finding plaintiff proffered sufficient evidence where plan administrator offered differing

18  and inconsistent reasons for denial of benefits).  However, where on appeal, an insurer

19  "merely offer[s] additional reason[s] for denying benefits," there is no such conflict.  *Abatie*,

20  421 F.3d at 1061.  The Ninth Circuit has "never held that an ERISA administrator's assertion

21  of a *supplemental* reason for denying a claim subsequent to the initial denial is sufficient

22  evidence to demonstrate that a plan administrator has breached its fiduciary duties to the

23  beneficiary."  *Id.*  A plan administrator can "not be expected to articulate all the reasons for

24  denial until the administrative record [is] complete."  *Id.*  "There is no rule that an ERISA

25  administrator, after failing ro raise a denial reason in the initial benefit determination, is

26  estopped from invoking that reason for denial upon appeal."  *Id.*  For these reasons, the Ninth

27  Circuit held "that an ERISA administrator's articulation of a new reason for denying a claim on

28

1   appeal after initial benefit determination has been rendered is permissible and does not

2   constitute material, probative evidence that the administrator's conflict of interest manifested

3   itself into an actual breach of fiduciary duty." *Id.* at 1062.

4         The court need not engage in any in-depth analysis on this issue.  That is because the

5   statements that Farhat claims are inconsistent are not inconsistent at all.  First, Hartford may

6   recognize Dr. Higgins as Farhat's treating physician, yet simultaneously conclude that Dr.

7   Higgins' opinions do not support a claim of disability.  Moreover, there is no inconsistency in

8   fact in Hartford's requests for information.

9         In conclusion, the court determines that Farhat has not demonstrated a sufficient

10  conflict of interest or entitlement to a heightened standard of review on any of the grounds.

11  For these reasons, the court will apply a discretionary standard of review in considering

12  Farhat's claims for relief.

13  **V.      Farhat's Request for Discovery**

14        Farhat also requests discovery on the conflict of interest issue.  In *Taft v. Equitable Life*

15  *Assurance Soc.*, 9 F.3d 1469 (9th Cir. 1993), the Ninth Circuit stated that "the abuse of

16  discretion standard permits the district court to 'review only the evidence presented to the

17  [plan] trustees.'"  *Id.* at 1471.  A majority of courts of appeal have taken the same position.

18  *See, e.g., Hall v. Unum Life Ins. Co. of America*, 300 F.3d 1197, 1201 (10th Cir. 2002)

19  (citing cases); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2nd Cir. 1995) (same).

20        The Ninth Circuit's decision in *Tremain v. Bell Industries*, relied on by Farhat, is not to

21  the contrary.  196 F.3d 970 (9th Cir. 1999).  In *Tremain*, the court considered evidence

22  offered by the plaintiff/claimant from outside the record in determining whether a conflict of

23  interest existed such that a heightened standard of review was appropriate.  *Id.* at 977.  The

24  Ninth Circuit held it was permissible for the court to consider evidence from outside the

25  record, consisting of W-2 statements, an employment agreement, and deposition testimony,

26  in determining the threshold issue regarding whether a conflict of interest existed.  *Id.* at 975,

27  977.  The court, however, did not hold that the plaintiff was entitled to discovery to determine

28

United States District Court

For the Northern District of California

17

United States District Court

For the Northern District of California

1   whether such evidence existed.  *Id.*

2       The *Tremain* court held, in addition, that once the standard of review has been

3   determined to be *de novo*, the district court could consider evidence outside the

4   administrative record "when that evidence 'is necessary to conduct an adequate *de novo*

5   review of the benefits decision.'"  *Id.* at 978 (quoting *Mongeluzo v. Baxter Travenol Long*

6   *Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995) (extra evidence allowed

7   where plan administrator had incorrectly interpreted plan)).[8]

8       In the present motion, Farhat argues that he should be given the opportunity to conduct

9   discovery to uncover evidence showing that Hartford's alleged conflict of interest caused a

10  breach of fiduciary duty.  He contends that since evidence from outside the administrative

11  record is admissible to establish defendants' conflict of interest, he should be allowed

12  reasonable discovery to gather such evidence.

13      The Ninth Circuit has not addressed the question whether a claimant may conduct

14  discovery for the purpose of obtaining evidence to support a claim of conflict of interest.  This

15  court, however, recently addressed the very issue in its October 19, 2005 order denying the

16  plaintiff's request for discovery in another ERISA case, *Litt v. Paul Revere Life Ins. Co.*, C 04-

17  0561 PJH.  This court's October 19, 2005 order comprehensively discussed the relevant case

18  law on point, as reiterated in part below.

19      In two cases from district courts within the Ninth Circuit – *Medford v. Metropolitan Life*

20  *Ins. Co.*, 244 F. Supp. 2d 1120 (D. Nev. 2003); and *Waggener v. Unum Life Ins. Co. of*

21  *America*, 238 F. Supp. 2d 1179 (S.D. Cal. 2002) – the courts allowed discovery.  In *Medford*,

22  defendants moved for a stay of discovery, arguing that discovery is not permitted in suits

23  alleging claims under ERISA.  Defendants also claimed that the court was required to review

24  the decision under an abuse of discretion standard, as the plan at issue vested the plan

25  administrators with full discretion.  *Medford*, 244 F. Supp. 2d at 1124.  The plaintiff argued that

---

26  

27      [8]   Where the standard of review is *de novo*, most circuits allow the admission of
    additional evidence – beyond what is contained in the administrative record – in limited
28  circumstances.  *See Hall*, 300 F.3d at 1201-02 (citing cases).

United States District Court

For the Northern District of California

discovery should be allowed in order to determine which standard of review to impose.  *Id.*

The court agreed with defendants that a district court is strictly limited to evidence in the administrative record when reviewing a plan under an abuse of discretion standard.  *Id.* at 1128 (citing *Taft*, 9 F.3d 1472).  The court noted, however, that under *Tremain*, the district court is not limited to the administrative record when considering evidence of a conflict of interest "to determine the correct standard of review," but has discretion to consider evidence outside the record.  *Id.*  The court cited *Mongeluzo*, a case holding that evidence outside the record may be considered as part of a *de novo* review of a benefits decision, for the proposition that "the court should consider what additional evidence is required 'to enable the full exercise of informed and independent judgment.'"  *Id.* (citing *Mongeluzo*, 46 F.3d at 943).

The court also stated that when determining the scope of discovery, a court should balance the goals of maintaining low premium costs "with the demands of reaching an informed and independent review of the benefits decision."  *Id.* at 1129.  Ultimately, the court allowed the plaintiff limited discovery on issues related to what standard of review should be applied and whether there was a conflict of interest affecting the benefits determination.  *Id.*

In *Waggener*, the administrator moved for a protective order precluding the employee/beneficiary from conducting any discovery outside the administrative record.  Both parties had agreed that the district judge would review the administrator's decision *de novo*.  The plaintiff argued that the court should consider evidence outside the administrative record, particularly the issue of whether the administrator's decision was biased because the administrator was also the insurer.  The plaintiff had propounded wide-ranging discovery requests.

The court first noted that under Ninth Circuit authority, the district court has discretion to consider evidence outside the record when conducting a *de novo* review of a benefits decision.  *Waggener*, 238 F.Supp. 2d at 1183 (citing *Mongeluzo*, 46 F.3d at 943-44).[9]  The

---

[9] The district court also acknowledged that when the review is for abuse of discretion, such review is limited to the evidence in the record.  *Id.* at 1182.

1   court also listed some of the "exceptional circumstances" that might give rise to the need for

2   additional evidence, such as

> claims that require consideration of complex medical questions or issues
> regarding the credibility of medical experts; the availability of very limited
> administrative review procedures with little or no evidentiary record; the
> necessity of evidence regarding interpretation of the terms of the plan rather
> than specific historical facts; instances where the payor and the administrator
> are the same entity and the court is concerned about impartiality; claims which
> would have been insurance contract claims prior to ERISA; and circumstances
> in which there is additional evidence that the claimant could not have presented
> in the administrative process.

8   *Id.* (quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1027 (4th Cir.

9   1993)).

10          The court reviewed the plaintiff's discovery requests, and concluded that some of the

11  information sought was discoverable.  However, the court made clear that its ruling was based

12  solely on the fact that the review was to be *de novo*, stating that where a district court is

13  reviewing the record for abuse of discretion, "it may be appropriate for the court to prohibit

14  discovery and instead simply assume that a conflict exists warranting some heightened

15  standard of review of the administrator's decision."  *Id.* at 1184-85 (citing *Palmer v. Univ.*

16  *Med. Group*, 973 F. Supp. 1179 (D.Or. 1997), where the court did not allow discovery in a

17  typical denial-of-benefits case.)

18          Here, as in the *Litt* case previously before this court, defendants contend that the

19  showing of conflict of interest must be based on the administrative record itself, and that

20  Farhat should not be permitted to embark on a "fishing expedition" in his effort to create a

21  serious conflict based on evidence from outside the record.  Defendants contend that the

22  district court's decision in *Medford* is not persuasive, and rely instead on *Newman v.*

23  *Standard Ins. Co.*, 997 F.Supp. 1276 (C.D. Cal. 1998).

24          As this court discussed in *Litt*, in *Newman*, the district court first considered whether the

25  appropriate standard of review should be abuse of discretion or *de novo*.  The plan at issue

26  granted discretionary authority to the insurer, but the court noted that it was faced with an

27  inherent conflict of interest because the insurer was both the administrator and the funding

28

United States District Court

For the Northern District of California

1  source.  Applying the burden-shifting analysis originally set forth by the Ninth Circuit in *Atwood*

2  *v. Newmont Gold Co., Inc*, the court found that the plaintiff had not met her burden of providing

3  material, probative evidence beyond the mere fact of the apparent conflict.  *Newman*, 997

4  F.Supp. at 1279-80 (citing *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1322 (9th Cir.

5  1995) (if benefit plan gives discretion to an administrator who is operating under an

6  "apparent" conflict of interest – which exists when the policy is issued by, and the plan is

7  administered by the same entity – "that conflict must be weighed as a factor in determining

8  whether there is an abuse of discretion")).

9         The court then addressed the issue of what evidence the court might consider in

10  making that review.  The court first observed, citing *Taft,* that in abuse of discretion cases,

11  evidence outside the administrative record is completely inadmissible, and stated that

12  consequently it would admit no evidence from outside the administrative record for deciding

13  the merits of the plaintiff's claim.  The court then considered the plaintiff's argument that she

14  was entitled to discovery on the issue of whether the administrator's decision was tainted by

15  its apparent conflict of interest as both administrator and funding source for the plan.  The

16  court conceded that this argument made "a certain amount of logical sense," but also found

17  "immense practical problems associated with this position."  Id. at 1280.

18         The court concluded that allowing discovery every time a plaintiff asserted conflict of

19  interest would impose on every ERISA case "far-reaching, open-ended, nearly limitless

20  discovery," and that this outcome would "fly in the face of the purpose of ERISA" – to allow

21  workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.

22  *Id.* at 1281.  The court also noted that *Lang*, the case most heavily relied on by the plaintiff, did

23  not support the request for discovery, as the material probative evidence in that case –

24  namely, the inconsistency in the administrator's explanations of the reasons for the denial of

25  benefits – came from the administrative record itself.  *Id.*  The court concluded that the plaintiff

26  was not entitled to take discovery on the issue of whether the insurer's determination was

27  tainted by self-interest.  *Id.*

28

United States District Court

For the Northern District of California

1   In *Litt*, this court also discussed the court's decision in *Brown v. Hartford Life and*
2   *Accident Ins. Co.*, in which the district court did not allow discovery.  2004 WL 2254550 (N.D.
3   Cal. 2004).  In *Brown*, the plaintiff moved for leave to conduct discovery in order to determine
4   whether an actual conflict of interest existed.  The court adopted the reasoning in *Newman*,
5   noting that allowing this type of discovery would undermine the primary goal of ERISA – "to
6   provide a method for workers and beneficiaries to resolve disputes over benefits
7   inexpensively and expeditiously" – because it would "involve far-reaching, open-ended, nearly
8   limitless discovery."  2004 WL 2254550 at *5 (quoting *Newman*, 997 F. Supp. at 1280
9   (internal citations omitted)).  The court found *Newman* more consistent with the goals of
10  ERISA than the decision in *Medford.  Id.* at *6.  The court denied plaintiff's motion for
11  discovery.

12  Similar to this court's decision in *Litt*, the court finds that Farhat's request for leave to
13  propound discovery to obtain evidence on the issue of conflict of interest should likewise be
14  DENIED.  There is no Ninth Circuit authority for the proposition that, where the standard of
15  review is abuse of discretion, a claimant/plaintiff can conduct discovery for the purpose of
16  obtaining information to attempt to show a serious conflict of interest resulting in a breach of
17  fiduciary duty.

18  Farhat has not cited any authority for the proposition that there is some automatic
19  entitlement to discovery in order to establish that a plaintiff is entitled to *de novo* review, where
20  the plaintiff has made no showing that a conflict exists, beyond the "apparent conflict" between
21  the insurer's role as insurer and as claims administrator.  Nor has Farhat made a
22  particularized showing as to what discovery is necessary and likely to be found.

23  The court also finds that the district courts' decision in *Medford* and *Waggener* are less
24  persuasive than those in *Newman* and *Brown*.  As noted above, *Waggener* held that extrinsic
25  evidence could be considered to ascertain whether a conflict existed in a situation where the
26  parties had agreed that the review would be *de novo*.  Thus, *Waggener* is not applicable in
27  the present case.

28

United States District Court
For the Northern District of California

1      *Medford* provides no authority for its conclusion that "there is sufficient language in the

2   plans to suggest an apparent conflict such that plaintiff should be able to pursue discovery on

3   this issue." 244 F.Supp. 2d at 1128.  In addition, the sole authority cited by the *Medford* court

4   in support of the propositions that where there is an apparent conflict of interest, "the court

5   must undertake an immediate inquiry to determine whether the conflict of interest *affected* the

6   decision" (suggesting some sort of imperative to act *sua sponte*), is *Regula v. Delta Family-*

7   *Care Disability Survivorship Plan*, 266 F.3d 1130, 1145 (9th Cir. 2001).  However, *Regula*

8   was overruled on other grounds by *Black & Decker v. Nord*, 538 U.S. 822 (2003), and was

9   then vacated by the Ninth Circuit.  *See Regula v. Delta Family-Care Disability Survivorship*

10   *Plan*, 354 F.3d 1133 (9th Cir. 2004).

11      The *Medford* court states further that "[w]hen looking for evidence of conflict of interest

12   to determine the correct standard of review . . . the district court should consider what

13   additional evidence is required 'to enable the full exercise of informed and independent

14   judgment,'" and cites *Regula*, 266 F.3d at 1147, which in turn cited *Mongeluzo*, 46 F.3d at

15   943.  However, *Mongeluzo* involved a case of *de novo* review, and addressed the use of

16   extrinsic evidence in such a case, not the right to discovery of new evidence.

17      Again, as this court concluded in *Litt*, the court finds that the court's decisions in

18   *Newman* and *Brown* come closer to providing an analysis applicable to this case.  The

19   *Newman* court emphasized the "practical problems" inherent in the argument that an ERISA

20   plaintiff is always entitled to discovery on the issue of conflict of interest – specifically, that

21   allowing such discovery would impose on every ERISA case far-reaching and nearly limitless

22   discovery, which would "fly in the face of the purposes of ERISA."  Although *Newman* is a pre-

23   *Tremain* case, its holding with regard to discovery was not invalidated by *Tremain*'s ruling that

24   the district court can consider evidence from outside the record on the question whether the

25   administrator's conflict of interest affected its benefits decision.  As noted, *Tremain* held only

26   that such evidence is admissible, not that a plaintiff is automatically entitled to seek such

27   evidence in discovery.

28

23

1    For these reasons, the court DENIES Farhat's request for discovery.

2                            **CONCLUSION**

3    For the reasons set forth above, the court GRANTS defendants' motion in support of a

4    discretionary standard of review.  The court DENIES Farhat's request for discovery.

5    This order fully adjudicates the matters listed at nos. 14, 19 of the clerk's docket for this

6    case.

7    **IT IS SO ORDERED.**

8

9
     Dated: November 15, 2005

10                                     _____

11                                     PHYLLIS J. HAMILTON
                                       United States District Judge

**United States District Court**

For the Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28