**United States District Court**
For the Northern District of California

1
2
3
4
5                                    **NOT FOR CITATION**

6                         UNITED STATES DISTRICT COURT

7                         NORTHERN DISTRICT OF CALIFORNIA

8

9   ALI J. FARHAT,

10              Plaintiff,                        No. C 05-0797 PJH

11
       v.                                        **ORDER GRANTING PLAINTIFF'S**
12                                               **MOTION FOR SUMMARY JUDGMENT;**
                                                 **DENYING DEFENDANT'S MOTION**
13                                               **FOR SUMMARY JUDGMENT**

14  HARTFORD LIFE AND ACCIDENT
    INSURANCE COMPANY,
15  PRICEWATERHOUSECOOPERS
    HEALTH AND WELFARE
16  BENEFIT PLAN,

17              Defendants.
    _____/

18          The parties' cross-motions for summary judgment came on for hearing before this

19  court on May 31, 2006.  Having read the parties' papers and carefully considered their

20  arguments and the relevant legal authorities, the court GRANTS plaintiff's motion for

21  summary judgment and DENIES defendants' motion for summary judgment for the reasons

22  that follow.

23                                    **BACKGROUND**

24          This is a case brought pursuant to the Employee Retirement Income Security Act of

25  1974 ("ERISA"), 29 U.S.C. § 1001, et seq., challenging defendants' denial of payment of

26  long-term disability ("LTD") benefits.  Plaintiff Ali Farhat ("Farhat") was employed by

27  Pricewaterhouse Coopers' ("PWC") tax department for nearly twenty years.  Farhat was

28  insured under the PWC Plan, an ERISA plan, issued by Hartford Life ("Hartford").  Farhat

began receiving short-term disability ("STD") benefits on April 21, 2003.  Thereafter, he

applied for, but was denied LTD benefits.  He challenges that denial in this case.

Farhat, who is currently fifty-five years-old, is HIV-positive.  Many of the issues in

this case are related to whether Farhat's LTD claim was based, at least in part, on his HIV-

related conditions, and whether Farhat's HIV-related conditions are in fact disabling.

A.     Plan Language

The PWC Plan provides monthly disability benefits to eligible PWC employees in the

event they become disabled from performing one or more of the essential duties of their

occupation for the first 60 months.  *See* Wilkins Decl., Exh. 3 at POL015.  Thereafter, the

employee must be prevented from performing one or more of the essential duties of any

occupation.  *Id.*

The policy defines disability as follows:

> **Disability** or **Disabled** means that during the Elimination Period and for the next 60 months You are prevented by:
>
> 1.     accidental bodily injury;
>
> 2.     sickness;
>
> 3.     Mental Illness;
>
> 4.     Substance Abuse; or
>
> 5.     pregnancy
>
> from performing one or more of the Essential Duties of Your Occupation, and as a result Your Current Monthly Earnings are no more than 80% of Your Indexed Pre-disability Earnings. After that, You must be so prevented from performing one or more of the Essential Duties of Any Occupation.

According to the Plan, an, "Essential Duty" is defined as one that: (1) is substantial,

not incidental; (2) is fundamental or inherent to the occupation; and (3) can not be

reasonably omitted or changed.  "To be at work for the number of hours in Your regularly

scheduled workweek is also an Essential Duty."

Under the Plan, a claimant may be required to submit proof of loss throughout his

disability.  It is defined by the Plan as follows:

2

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  **What is Proof of Loss?**

2  Proof of Loss may include but is not limited to the following:

3  1.    documentation of:

4  a) the date Your Disability began;

5  b) the cause of Your Disability;

6  c) the prognosis of your Disability;

7  d) Your Earnings or income, including but not
   limited to copies of Your filed and signed federal
8  and state tax returns;

9  e) evidence that You are under the Regular Care
   of a Physician;

10

11  2.    any and all medical information, including x-ray films and
   photocopies of medical records, including histories,
12  physical, mental or diagnostic examinations and
   treatment notes;
   . . . . .

13  The Plan also provides claims procedures for appeals of denials of benefits.  *See*

14  POL042.  It provides that on appeal, Hartford "shall take into account all comments,

15  documents, records, and other information submitted by you relating to the claim, without

16  regard to whether such information was submitted or considered in the initial benefit

17  determination."  It further provides that "[t]he individual reviewing your appeal shall give no

18  deference to the initial benefit decision and shall be an individual who is neither the

19  individual who made the initial benefit decision, nor the subordinate of the individual."

20  The Plan provides as follows regarding medical evidence:

21  When deciding an appeal that is based in whole or in part on medical
   judgment, we will consult with a medical professional having the appropriate
22  training and experience in the field of medicine involved in the medical
   judg[]ment and who is neither an individual consulted in connection with the
23  initial benefit decision, nor a subordinate of such individual.

24  *Id.*

25  Additionally, the Plan provides that

26  if the decision on appeal is based on medical judgment, . . . any adverse
   benefit determination on review will be in writing and will include. . . .either (i)
27  an explanation of the scientific or clinical judgment for the decision on appeal,

28

3

1    applying the terms of the Policy to your medical circumstances, or (ii) a

2    statement that such explanation will be provided to you free of charge upon
     request.

3        B.    Farhat's Medical History and Physicians

4    Dr. Higgins

5        Farhat was diagnosed with HIV in May 2001 when he was treated for a

6    seroconversion illness, the acute phase of HIV infection that occurs shortly after infection.

7    Farhat began HIV treatment with Dr. Higgins at that time, and Dr. Higgins remains his

8    treating physician.  In April 2003, Farhat's HIV infection became acute, and his viral count

9    rose.  He suffered numerous physical symptoms, including fever and malaise, and was

10   seen in the CPMC emergency room on April 23, 2003.  Dr. Higgins then placed Farhat on

11   short-term disability at that time for "chronic debilitating depression."

12       From May to June 2003, Farhat experienced a number of other symptoms, including

13   fatigue, diarrhea, panic disorder, anxiety, memory loss, depression, perseveration, inability

14   to concentrate, and night sweats.  A.R. 111.  Dr. Higgins' recommended treatment included

15   therapy, psychiatric evaluation, and "consideration of [Farhat's] HIV needs."  *Id.*

16       On December 21, 2004, Dr. Higgins wrote a letter on Farhat's behalf in connection

17   with Farthat's LTD application, noting that Farhat

18       has continued loss of cognitive function, problem solving, memory, etc.  Mr.
         Farhat now suffers from HIV dementia complicated by chronic and severe

19       depression.  I feel that Mr. Farhat continues to remain completely disabled.

20   A.R. 333.

21   Dr. Shuster

22       Dr. Shuster is a psychologist who began seeing Farhat in June 2003 for his anxiety

23   and depression.  On October 3, 2003, Dr. Shuster noted that Farhat's "depression, anxiety,

24   [and] fears due to HIV-related mistreatment at his job" could effect his ability to function at

25   his job.  A.R. 218.  She further noted that Farhat had "retrogressed" since she began

26   seeing him.  A.R. 217.  Dr. Shuster noted that Dr. Higgins had prescribed anti-depressants

27   for Farhat, but that Farhat refused to take them.  A.R. 218.  Farhat discontinued therapy

28

4

United States District Court

For the Northern District of California

1    with Dr. Shuster in February 2004, the day before he had back surgery (described below)

2    because he was no longer interested in therapy and had had to cancel several sessions.

3    A.R. 162.

4        Dr. Smith

5        In November 2003, Farhat began experiencing back and leg pain.  A.R. 149.  On

6    December 2, 2003, Farhat was seen at an emergency room in Santa Rosa with severe

7    pain in his right leg and lower back.  A.R. 186.  In January 2004, Farhat began seeing Dr.

8    Smith, an orthopedic surgeon, for back and leg pain.  Farhat underwent back surgery on

9    February 4, 2004.

10       On March 4, 2004, Dr. Smith noted that Farhat was unable to work due to the back

11   impairment, and that he believed the limitations would exist until April 4, 2004.  A.R. 208.

12   Two months later, in a May 4, 2004 statement, Dr. Smith noted that Farhat had recovered

13   from his back surgery and injuries.  A.R. 150.

14       Dr. Horstman

15       On December 24, 2004, Dr. Horstman, a board-certified neuropsychologist,

16   submitted to Hartford, in connection with Farhat's LTD claim, a forty-one page letter

17   detailing the results of neuropsychological tests that he conducted on Farhat.  Dr.

18   Horstman met with Farhat on November 29, December 3, December 6, and December 9,

19   2004 to administer neuropsychological and neurocognitive tests (including the MMPI and

20   Wechsler or "WAIS" tests).  Additionally, Dr. Horstman consulted with Farhat's treating

21   physician, Dr. Higgins, and Farhat's former psychologist, Dr. Shuster.

22       Dr. Horstman detailed Farhat's medical, professional, and life histories.  His

23   pertinent conclusions regarding Farhat's medical condition were as follows:

24       [Farhat's] neurological testing has documented neurocognitive deficits in the
         domains of speed of information processing, memory, learning (particularly
25       with a tendency towards confabulation given a source memory impairment),
         and reduced learning efficiency.  In the motor domain, all NP tests of motor
26       skills and strengths are compromised and in the neuropsychologically-
         impaired range.  Though his loss of physical strength may be concordant with
27       being partially bedridden from fatigue, this would not account for the
         substantial difference between dominant versus non-dominant hand speed as

28

5

United States District Court

For the Northern District of California

1  evidenced by Finger Tapping.  Moreover, fine motor coordination speed is
2  severely impaired. . . .   [T]here have been changes in his handwriting and, . .
   . he cannot draw a line without a fine motor intention tremor.

3  Mr. Farhat has a severe case of MCMD [undefined].  This milder form of
   neurocognitive disorder represents at least one significant impairment in an
4  area of daily life functioning, such as work efficiency or the management of
   financial affairs, and at least two deficits in at least two cognitive domains. . . .
5  He also has several prominent signs of incipient dementia, particularly
   significant psychomotor slowing, inability to organize and plan his daily affairs,
6  and lack of self-care skills.

7  A.R. 374-75.

8      Dr. Horstman noted that Farhat's "inability to follow through with tasks . . . is

9  neuropsychologically based, as a result of HIV."  A.R. 375.  He concluded that:

10  The idea, let alone reality, of meeting the demand characteristics of his
    customary and normal work duties in a timely fashion has been, and will
11  remain, outside of the boundaries of his functional capacity.  He will never
    work again.
12  Id.

13      C.      Farhat's Benefits Application History

14      Farhat received short-term disability benefits from April 23, 2003 until October 22,

15  2003, based on depression and anxiety.  In support of his short-term benefits application,

16  Farhat submitted statements from treating physician Dr. Higgins, and Dr. Shuster, the

17  psychologist whom he had been seeing.

18      In March 2004, after Farhat's short-term benefits expired, Farhat applied for long-

19  term disability benefits ("LTD").[1]  With his LTD application, Farhat submitted statements

20  from Dr. Smith, the orthopedic surgeon, and his treating physician, Dr. Higgins.  On his

21  application, Farhat listed only Drs. Higgins, his HIV-treating physician, and Smith, his

22  orthopedic surgeon, and other hospitals that had treated him for his back condition.  A.R.

23  547.  He did not list his psychologist, Dr. Shuster, as he had on the prior short-term benefits

24  _____

25      [1]There appears to be some dispute regarding the basis for Farhat's LTD claim.  Hartford
    contends that it was based on a back injury and back surgery, and that Farhat informed
26  Hartford that he was no longer disabled from depression.  Hartford further argues, that at the
    time of Farhat's LTD claim, he was not being treated for disabling HIV (and that if he was, he
27  did not notify Hartford of that fact).  Farhat, however, contends that it was based on the back
    condition in addition to HIV-related conditions, including cognitive difficulties and depression.

28

6

United States District Court

For the Northern District of California

1    application.  Farhat noted "terrific pain – sedated" as the condition that prevented him from

2    working.  A.R. 203.

3        On March 16, 2004, Hartford apparently contacted Farhat to clarify his condition. FN

4    016-17.[2]  Farhat allegedly told Hartford claims examiner, Sarah Gagliardi, that he was

5    "trying to work through [the] major depression."  *Id.*  Farhat stated that he "didn't think" the

6    depression would prevent him from returning to work.  *Id.*  Farhat further stated that he was

7    optimistic that he would return to work, "but his doctor [was] not."  *Id.*

8        The next day, on March 17, 2004, Hartford notified Farhat that it had received his

9    LTD application.  A.R. 553.  It also noted that it had requested Farhat's medical records

10   from the hospitals treating his back injury, and from Dr. Smith, Dr. Higgins, and Dr. Shuster.

11   *Id.*  On April 21, 2004, Dr. Shuster, Farhat's former psychologist, submitted her treatment

12   notes to Hartford at its request.  A.R. 161-71.

13       On May 4, 2004, Hartford approved LTD benefits from October 22, 2003, the

14   expiration date of Farhat's short-term benefits, until April 4, 2004.  Hartford, however,

15   denied benefits beyond April 4, 2004, noting that Farhat failed to provide sufficient proof of

16   loss to support a disability beyond that date.  A.R. 418-419.  In conjunction with its denial,

17   Hartford noted that:

18       The most recent medical information that we have on file is the Attending
         Physician's Statement of Disability completed by Dr. Taylor Smith, dated
19       March 4, 2004.  Dr. Smith indicates that you underwent surgery for a
         herniated disc on February 4, 2004.  Dr. Smith indicated on the form that your
20       condition was recovered, and that your restrictions would only last through
         April 4, 2004.  As such, your LTD benefits are approved through April 4, 2004.
21       At this time we find that you have failed to provide Proof of Loss, as required
         by the policy, to support that you remained disabled beyond April 4, 2004.  As
22       such, benefits beyond April 4, 2004 have been denied and your LTD has
         been closed.
23
     *Id.* at 418.
24
25       Hartford further advised Farhat that if he did

26       remain disabled beyond April 4, 2004, [an enclosed] Attending Physician's

27       [2]Documents labeled FN 0001- FN 020 were attached to the Administrative Record in
28   this case.  Like defendants, the court refers to those documents by "FN."

**United States District Court**
For the Northern District of California

1    Statement of Disability must be completed by the physician who is currently
2    treating you for your disabling condition.  If you'd like this information
     considered, we must receive it as soon as possible.

3    *Id.* at 419.

4         On November 4, 2004, Farhat submitted an appeal of Hartford's denial, and

5    requested an extension of time to supplement the appeal, which Hartford granted.  A.R.

6    109-110.  In that appeal, Farhat's attorneys attached the June 18, 2003 Attending

7    Physician Statement of Disability from Dr. Higgins in support of Farhat's LTD claim.  In that

8    statement, Dr. Higgins opined that Farhat was unable to work due to lack of focus, memory

9    loss, and perseveration associated with HIV.  Farhat contended in his appeal that nothing

10   had changed since Dr. Higgins' completion of the statement, and that Hartford appeared to

11   have ignored the evidence in conjunction with its denial of Farhat's LTD application.

12        Meanwhile, as noted above, in November and December 2004, Farhat underwent

13   extensive cognitive testing by Dr. Horstman, a board-certified neuropsychologist.  Dr.

14   Horstman administered the Wechsler Adult Intelligence Scale ("WAIS") on Farhat.  The

15   results revealed mental slowing as a result of Farhat's HIV infection.  Additionally, the tests

16   showed that Farhat had some psychomotor slowing.  Dr. Horstman concluded that Farhat

17   had suffered permanent brain damage as a result of the infection, and that "the idea, let

18   alone reality, of meeting the demand characteristics of [Farhat's] customary and normal

19   work duties in a timely fashion has been, and will remain, outside of the boundaries of his

20   functional capacity."  A.R. 375.  Dr. Horstman further opined that Farhat's disability was not

21   due to depression or anxiety.  Rather, the depression and anxiety Farhat experienced were

22   related to the cognitive deficits caused by the HIV infection.

23        On January 3, 2005, Farhat supplemented his appeal.  The supplement included a

24   forty-page opinion letter from Dr. Horstman, the neuropsychologist, explaining why Farhat

25   was unable to work.  Additionally, Farhat included the December 2004 letter from his

26   treating physician, Dr. Higgins, stating that Farhat

27        has continued loss of cognitive function, problem solving, memory, etc.  Mr.
          Farhat now suffers from HIV dementia complicated by chronic and severe
28

8

1   depression.  I feel that Mr. Farhat continues to remain completely disabled.

2   A.R. 333.  Farhat also submitted his own declaration, which detailed the effects that HIV

3   had had on his ability to work.  A.R. 119-123.

4         In his supplement to the appeal, Farhat argued that he had been unable to perform

5   the requirements of his job as tax director since April 22, 2003, the inception of his short-

6   term benefits.  He argued that in considering his LTD application, Hartford had evidence

7   before it from Dr. Higgins, his treating physician, that as of June 18, 2003, Farhat was

8   unable to work.  Farhat asserted that

9           [d]espite having this information Hartford failed to request an updated APS
            from Mr. Farhat's treating physician [Dr. Higgins].  Rather, Hartford contacted
10          Mr. Farhat's therapist [Dr. Shuster] and concluded that because Mr. Farhat
            was not seeing her at the time, there was no evidence that he was disabled
11          due to depression.

12  A.R. 80.  Accordingly, Farhat argued that Hartford, in conjunction with his LTD application,

13  improperly failed "to consider whether Mr. Farhat was disabled by his primary medical

14  condition and related impairments – HIV-related cognitive difficulties."  *Id.*

15        On January 4, 2005, Hartford informed Farhat that it would "begin the appeal

16  process" and acknowledged that under ERISA, it had forty-five days to make its decision.

17  Hartford, however, did not deny Farhat's appeal until March 8, 2005, sixty-three days later.

18  In its denial letter, Hartford concluded that "Mr. Farhat's physicians ha[d] not submitted

19  documentation of ongoing treatment for a condition that [sic] would prevent him from

20  working."  A.R. 41.  In support, Hartford noted:

21          In order to make a determination of disability status, information is required
            from Mr. Farhat's attending physicians to assess his ability to perform the
22          essential functions of any occupation.  Addressing the question of disability
            requires a concise understanding of his occupational functioning.  It is not
23          sufficient for Mr. Farhat's physicians to merely list symptoms as though they
            inherently imply a certain level of functional impairment or to certify disability
24          without providing medical evidence supporting his or her opinion.

25  *Id.*  Hartford concluded that the December 2004 letter from Farhat's treating physician, Dr.

26  Higgins, did "not document any medical treatments, test results or exam findings that would

27  substantiate Mr. Farhat's ongoing disability beyond April 4, 2004."  A.R. 42.  Hartford

28

1   asserted that "[w]hile this is Dr. Higgins' opinion, there is no medical information to support

2   these statements." *Id.*

3       Hartford concluded that "the documentation in Mr. Farhat's file, taken as a whole,

4   [did] not indicate that his condition would prevent him from performing his occupation." *Id.*

5                                    **DISCUSSION**

6   A.   Standard of Review

7       A challenge to an ERISA plan's denial of benefits is reviewed de novo unless the

8   benefit plan gives the administrator or fiduciary discretionary authority to determine

9   eligibility for benefits or to construe the terms of the plan.  *See Aetna Health, Inc. v. Davila*,

10  542 U.S. 200, 211 (2004); *Johnson v. Buckley*, 356 F.3d 1067, 1075 (9th Cir. 2004).  When

11  such discretion exists, the district court reviews the administrator's determinations for an

12  abuse of discretion.  *See Jebian v. Hewlett Packard Co.*, 349 F.3d 1102, 1103 (9th Cir.

13  2003).

14      This court previously ruled that the standard of review in this case is abuse of

15  discretion.  *See* November 14, 2005 Order.  Ordinarily, summary judgment is appropriate if

16  there is no genuine issue as to any material fact and the moving party is entitled to

17  judgment as a matter of law.  Fed. R. Civ. P. 56.  In ERISA actions, however, where the

18  plaintiff is challenging the plan administrator's denial of benefits and the district court has

19  already determined that the abuse of discretion standard of review applies, "a motion for

20  summary judgment is merely the conduit to bring the legal question before the district court

21  and the usual tests of summary judgment, such as whether a genuine dispute of material

22  fact exists, do not apply." *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.1999).

23      An abuse of discretion standard is the same as "arbitrary and capricious." *Jebian*,

24  349 F.3d at 1103.  When the court "review[s] for abuse of discretion, it is because the plan

25  has put the locus for the decision in the plan administrator, not in the courts, so we cannot

26  substitute our judgment for the administrator's." *Jordan v. Northrop Grunman*, 370 F.3d

27  869, 875 (9th Cir. 2003).  In such cases, the district court must ask whether the plan

28

                                           10

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

administrator abused its discretion by (1) rendering decisions without any explanation; (2) construing provisions of the plan in a way that conflicts with the plain language of the plan; or (3) relying on clearly erroneous findings of fact in making benefit determinations. *Bendixen*, 185 F.3d at 944; *accord Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005).  "[A] decision 'grounded on *any* reasonable basis' is not arbitrary or capricious." *Jordan*, 370 F.3d at 875.

The decision of the plan administrator will be upheld if it is based upon a *reasonable* interpretation of the plan terms and was made in good faith.  *Bendixen*, 185 F.3d at 944.  Where there is relevant evidence in the administrative record "that reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence, the decision must be upheld." *Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1473 (9th Cir. 1993).

The court looks to the plain language of the plan to determine whether the plan administrator's interpretation was arbitrary and capricious.  *Canseco v. Constr. Laborers Pension Trust for S. Cal.*, 93 F.3d 600, 606 (9th Cir. 1996). The administrators are found to have abused their discretion if they construed provisions of the plan in a way that clearly conflicts with the plain language of the plan.  *See id.*  Under the abuse of discretion standard, the administrator's decision will be upheld as long as there is "substantial evidence to support the decision," i.e., "relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."  *Snow v. Standard Ins. Co.*, 87 F.3d 327, 332 (9th Cir. 1996), *overruled on other grounds* in *Kearny v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999).

Review under the "clearly erroneous" standard is significantly deferential, "requiring a definite and firm conviction that a mistake has been committed."  *Concrete Pipe & Prods., Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 623 (1993).  Even if an administrator's findings are directly contrary to some evidence in the record, that does not

11

necessarily mean that the decision to deny benefits was an abuse of discretion. *See*

*Benedixen*, 185 F.3d at 944. As long as "substantial evidence" supports the administrator's

findings, this court will not reverse the decision to deny benefits. *See McKenzie v. General*

*Tel. Co. of Cal.*, 41 F.3d 1310, 1317-18 (9th Cir. 1994).

B.      Parties' Motions

        Having reviewed all of the motion papers, there are essentially two dispositive issues

before this court, and most of the ancillary issues raised by both parties are addressed in

the context of these issues:

        i.      The scope of this court's review and the evidence that it may consider in

                reviewing Hartford's denial of Farhat's benefits, including whether the court

                may consider the Social Security Administration's (SSA) decision granting

                Farhat benefits; and

        ii.     Whether Hartford abused its discretion in rejecting Farhat's treating

                physicians' opinions without medical evidence to the contrary.

        1.      Scope of Court's Review and Evidence that it May Consider on Review

        There is no dispute that this court is reviewing Hartford's March 8, 2005 denial of

Farhat's appeal of its initial denial of LTD benefits. Farhat, however, seeks to restrict this

court's review of that denial to the four corners of the denial letter, *see* AR041, asserting

that to allow Hartford to make arguments outside of the denial letter would result in

sandbagging him. However, the Ninth Circuit case cited by Farhat does not stand for the

narrow interpretation he advances. *See Jebian*, 349 F.3d at 1103. It appears that Farhat

wants to argue that he is entitled to summary judgment, but then seeks to prevent Hartford

from advancing relevant arguments in defending its denial of his benefits. None of the very

specific factual assertions and arguments of Hartford's with which Farhat takes issue

inappropriately expand the scope of its denial letter. Therefore, the court considers the

arguments made by Hartford in spite of Farhat's objection that they are beyond the scope

of the reasons asserted in the March 8, 2005 denial letter.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Additionally, Hartford contests this court's ability to consider the SSA's November

2    2005 decision finding Farhat totally disabled and approving his claim for benefits.  *See* Exh.

3    B, Pl. Request for Judicial Notice ("RJN"). Following Hartford's March 8, 2005 denial,

4    Farhat applied for social security benefits in August 2005.  He argues that the SSA

5    determination is relevant evidence in this ERISA case regarding his inability to perform his

6    occupation and also regarding Hartford's unreasonableness in denying his claim.

7    Hartford responds that since the standard of review is abuse of discretion, this court

8    may not consider Farhat's social security award. It argues that the award is outside of the

9    administrative record and was not before Hartford at the time that it denied Farhat's claim,

10   and thus cannot be a basis for showing that Hartford's decision was unreasonable.  It

11   further notes that SSA determinations are not binding on plan administrators anyway.  *See*

12   *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir. 1990).

13   In reply, Farhat argues that consideration of the SSA decision is mandatory pursuant

14   to Federal Rule of Evidence 201(d).  He argues that the decision is not outside of the

15   administrative record "because it is an administrative agency action."  Farhat further argues

16   that all the evidence that the SSA decision is based on was submitted to Hartford in

17   conjunction with its review of his claim; therefore, Hartford is not prejudiced by this court's

18   consideration of the SSA decision.

19   When reviewing an administrator's decision for an abuse of discretion, the court

20   must consider only the evidence that was before the administrator when the decision was

21   made.  *Alford v. DCH Group Long Term Disability Plan*, 311 F.3d 955, 957 (9th Cir. 2002).

22   Because the standard of review in this case is abuse of discretion, this court declines to

23   consider the SSA decision.

24        2.    Whether Hartford Abused its Discretion in Rejecting Farhat's Treating
                Physicians' Opinions without Medical Evidence to the Contrary
25

26   The crux of this case boils down to whether a person may be considered disabled

27   based on an irreversible, sporadically stable illness such as HIV.  As noted by Farhat's

28

**United States District Court**
For the Northern District of California

1   physicians, especially Dr. Horstman, the very nature of HIV is that it manifests into various

2   conditions, diseases, and related impairments.   Here, the court must consider if an

3   employee like Farhat is diagnosed with HIV in 2001, and progressively deteriorates, yet

4   meanwhile fails to label his disability as HIV itself – but instead claims a disability based on

5   the manifestations of the illness – whether the employer may deny him benefits by

6   asserting that his HIV disabling impairments were not the cause of his disability until the

7   claimant or his doctor officially labels the impairments as HIV-related.

8        Both parties agree that April 4, 2004, the last date for which Hartford approved LTD

9   benefits, is the determinative date in this case.  In other words, Farhat was required to

10  show that he was suffering from a disability as of that date.  Additionally, as Farhat correctly

11  notes, the disability inquiry regarding the April 4, 2004 date, according to the Plan, was

12  whether Farhat was prevented from performing one or more of the essential duties of his

13  occupation as a tax manager at PWC.   It is undisputed that Farhat's position as a tax

14  manager required him to analyze complex high-level issues, comply with strict deadlines,

15  manage his staff, and handle high-stress and high-stakes deals.

16        a.     Nature of Farhat's Disability

17        Farhat notes that Hartford has implied that he has changed the disabling condition

18  for which he seeks benefits from depression to HIV-cognitive related impairments.  He

19  disagrees, but argues that even if he was disabled by a succession of conditions, nothing in

20  the Plan required him to be continuously disabled by only one medical condition.  So long

21  as he was unable to work in his occupation due to sickness, he is entitled to Plan benefits,

22  even if it was due to multiple conditions.  Specifically, he asserts that although his STD and

23  initial LTD may have been based significantly on depression and back injuries, respectively,

24  he "is still entitled to benefits based on HIV-related cognitive impairments that arose later,

25  so long as he remained consistently disabled since his last day of work."

26        Moreover, Farhat suggests that the initial diagnosis of his medical condition as

27  "depression" turned out to be erroneous, as demonstrated by neuropsychologist Dr.

28

United States District Court

For the Northern District of California

1   Horstman's reports.  These reports indicate that HIV-related cognitive impairments that

2   Farhat suffered from could be confused with depression.  Farhat posits that although he

3   "may have experienced some depression, or depression-like symptoms, the underlying

4   cause of his disability is, and always has been, severely impaired cognitive functioning

5   resulting from HIV."  He notes that documentation linking his symptoms with HIV dated

6   back to June 2003.  AR 317, 320.

7       Hartford does not dispute that multiple conditions can provide a basis for a disability

8   claim, but instead asserts that Farhat no longer suffered from a disability on April 4, 2004.

9   Specifically, Hartford suggests that it was not until Farhat's appeal in January 2005 that he

10  raised the issue of his HIV-related condition.  Instead, it suggests that the basis for Farhat's

11  STD was his depression; and that the sole basis for his LTD was his back injury since,

12  according to Hartford, in his March 12, 2004 LTD application, "Farhat abandoned his

13  depression claim and instead asserted that a back injury was the sole cause of his alleged

14  disability."  Citing AR 544-552.  In support, Hartford notes a March 16, 2004 conversation

15  that one of its claim representatives had with Farhat, in which Farhat stated that he was no

16  longer seeing his psychologist and that he did not believe his depression would prevent him

17  from returning to work.

18      In reply, Farhat asserts that nothing in the record "supports a conclusion that [he]

19  'suffered from memory loss, perseveration, and inability to focus in June 2003', AR 240,

20  recovered as of April 4, 2004, and then relapsed in November 2004."

21          b.    Nature and Timing of Treatment

22      Farhat specifically challenges Hartford's March 8, 2005 conclusion that his

23  "physicians [did] not submit[] documentation of *ongoing* treatment for a condition which

24  would prevent him from working."  He argues that contrary to Hartford's assertion

25  otherwise, his "doctors thoroughly documented and explained why his HIV-related

26  conditions prevented him from performing his occupation as a Tax Director, or indeed any

27  occupation, since April 2004, and explained that there was no treatment which could

28

United States District Court

For the Northern District of California

1  remedy his disabling impairments."  He further notes that Hartford had no medical evidence

2  or opinions suggesting otherwise.

3      In support, Farhat notes the June 2003 Attending Physician Statement ("APS")

4  completed by his treating doctor, Dr. Higgins.  Farhat also notes a Hartford claim

5  representative's notes from a September 2003 conversation with Dr. Higgins, during which

6  Dr. Higgins stated that Farhat's "[psychological condition] prevents him from following thru

7  on things, [that he] gets agitated and tangential in his thought process."  FNO20.  Farhat

8  further points to the December 2004 submissions from Dr. Higgins and the results of Dr.

9  Horstman's extensive neuropsychological testing.

10     Farhat also argues that the fact that Dr. Horstman's evaluation did not take place

11  until 2004 "does not change the fact that Dr. Horstman used objective medical evidence to

12  date the origin of Farhat's serious (and permanent) cognitive impairments to April 2003,

13  one year before the effective date of Hartford's denial of benefits."

14     Hartford responds that the evidence submitted with Farhat's appeal did not establish

15  an HIV-related impairment as of April 4, 2004.  Again, like the denial, Hartford does not

16  really address Dr. Horstman's reports, but simply dismisses them as "belated."  As for Dr.

17  Higgins' records and the medical evidence as a whole, Hartford contends that Farhat was

18  not treated "for alleged disabling HIV . . . during [his LTD] claim."  Instead, it suggests that

19  Farhat was first treated for disabling HIV in January 2005.  As for Dr. Higgins' December

20  2004 statements, Hartford asserts that Dr. Higgins' diagnosis ran counter to previous

21  reports and that it was conclusory and unsubstantiated.

22     Hartford concedes that Dr. Higgins' 2003 and 2004 treatment notes may state that

23  he was seeing Farhat for HIV care, but asserts that they contain "nothing about cognitive

24  impairment."  It suggests that Dr. Higgins' June 18, 2003 statement, in which the doctor

25  opined that Farhat was limited based on "no focused attention ability, has memory loss,

26  perseveration due to his depression" did not indicate disabling cognitive impairments

27  because Farhat was later referred to a psychologist.  It further points to psychologist Dr.

28

16

United States District Court

For the Northern District of California

1   Shuster's October 2003 - January 2004 treatment notes, and argues that these do not

2   indicate cognitive impairment but instead show that Farhat "discussed [his] work crisis over

3   telling PWC that he had HIV, mourning the loss of his partner of eighteen years, . . . sexual

4   addiction, relationship issues, and the taking of Vicodin for his back problems."  As for Dr.

5   Horstman's report, Hartford argues that it at "most may show that Farhat had cognitive

6   impairment[s] at the time the tests were administered in December 2004, . . . [but] do not

7   establish that Farhat was disabled prior to that time."

8        In reply, Farhat notes that Dr. Horstman's November 2004 test reports state that "*as

9   of May 2001*, Farhat already had some compromised brain integrity, and attributed some of

10   Farhat's cognitive impairments specifically to an April 2003 episode of HIV encephalitis."

11   AR 373-74.  He also asserts that Hartford initially argues that the court should ignore Dr.

12   Higgins' 2003 APS, which noted Farhat's cognitive impairments, on the ground that it was

13   too early, and then simultaneously argues that the court  ignore Dr. Horstman's report and

14   Dr. Higgins' statement from December 2004 as too late.  According to Farhat, Hartford

15   asserts that none of the medical evidence was generated "at just the right time."  Farhat

16   further argues that "nothing in [Hartford's] Plan requires a participant to divine the date on

17   which his benefits will be terminated and see his treating physician to document his

18   condition on that exact day."

19             c.    Hartford's Rejection of Farhat's Physicians' Opinions

20        Farhat argues that Hartford asks the court to dismiss Dr. Horstman's opinions as

21   "speculation," without any authority whatsoever that Dr. Horstman's conclusions are invalid.

22   Moreover, Farhat correctly notes that Hartford did not address Dr. Horstman's conclusions

23   through the claims review process; and that, in fact, it failed to address Dr. Horstman's

24   evidence entirely.

25        Farhat focuses specifically on Dr. Higgins' June 2003 APS and his December 2004

26   letter.  He argues that Dr. Higgins provided a lot more than a mere list of symptoms,

27   offering a "considered diagnosis, explanation for that diagnosis, and reasons why Farhat

28

17

United States District Court

For the Northern District of California

1    cannot perform his occupational duties – based on Dr. Higgins' expertise and years of

2    treatment of Farhat." A.R. 334-35.  Farhat notes that even if there was room for Hartford to

3    question Dr. Higgins' opinions, that it had Dr. Horstman's well-documented conclusions

4    based on Dr. Horstman's neuropsychological testing.

5        Farhat further asserts that the record in this case contains no evidence contradicting

6    his treating physicians' opinions regarding his disability.  He asserts that there must be

7    something in the record establishing the reasonableness of the plan administrator's

8    decision for it to withstand judicial scrutiny.  In other words, Farhat concedes that "it is not

9    an abuse of discretion [for a plan administrator] to reject medical evidence submitted by a

10    plaintiff when this evidence is called into question by other medical professionals or

11    contradicted by other medical evidence in the record."

12        However, he argues, that "where, here, the record consists solely of evidence

13    supporting the plaintiff's claim, including a detailed explanation of the basis for the plaintiff's

14    claim that is not refuted by a single medical professional, there is no authority to support a

15    conclusion that the administrator has a reasonable basis to conclude that the plaintiff is not

16    disabled."  Because he contends that no inconsistent or contradictory evidence exists in

17    this case, Farhat argues that there is no reasonable basis for the denial.

18        While Farhat concedes that his treating physicians' opinions are not entitled to

19    special deference and that ERISA does not impose a heightened burden of explanation on

20    plan administrators when they reject a treating physician's opinion, *see Jordan*, 370 F.3d at

21    878-79, he notes that Hartford "may not arbitrarily refuse to credit [his] reliable evidence,

22    including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538

23    U.S. 822, 834 (2003); *Jordan*, 370 F.3d at 378-79.  He then notes that there was no basis

24    for Hartford to reject Dr. Horstman's opinion, and that such rejection was arbitrary.  To the

25    extent that it did so on the basis of its claims examiner, Farhat claims she had no medical

26    background and could not provide a basis for such rejection.

27        Farhat also argues that the Plan itself required Hartford to "consult with a medical

28

United States District Court

For the Northern District of California

1   professional having the appropriate training and experience in the field of medicine." POL

2   42.  He asserts that this failure to follow the Plan terms alone establishes that Hartford

3   abused its discretion.  *See Atwood v. Newmont Gold, Inc.*, 45 F.3d 1317, 1323-24 (9th Cir.

4   1995); *Jebian*, 349 F.3d at 1105.

5         As noted, in opposition, Hartford characterizes Dr. Higgins' December 2004

6   statement as "conclusory" and inconsistent with his prior opinions.  It refers to Dr.

7   Horstman's reports as "speculation."  Hartford also asserts that it reviewed the record as a

8   whole, and chose to reject Dr. Higgins' December 2004 opinions.

9         Farhat replies that Hartford did not characterize Dr. Higgins' statement as

10  inconsistent in its denial letter, and that the statements are indeed consistent.  He asserts

11  that Higgins' June 2003 statement clearly notes that Farhat was disabled based on a

12  cognitive impairment, which was confirmed by his September 2003 and December 2004

13  opinions.  Farhat also argues his previous "unrealistic optimism about returning to work  . . .

14  [and] [t]he fact that it took some time for [him] to come to terms with the fact that he was no

15  longer the high-functioning individual he used to be [should] not undermine his claim."

16  Instead, he argues that the record shows "that [he] was driven to return to work if at all

17  possible."

18             d.    Analysis

19        The court finds that both of Farhat's physicians, Drs. Higgins and Horstman, opined

20  that Farhat's cognitive impairments were disabling as of April 4, 2004.  Although not

21  exclusive, the following evidence shows that the doctors considered the impairments to be

22  disabling.

23      •   Horstman's opinion that Farhat's cognitive impairments, including

24          compromised brain structure, acute fatigue, and memory loss, dated back to

25          April 2003.  A.R. 374.

26      •   Higgins' treatment records – show that Farhat was suffering from HIV-related

27          cognitive impairments in June 2003.  A.R. 111.

28

United States District Court

For the Northern District of California

- Higgins' later December 2004 letter demonstrated the progression of the cognitive impairments, noting that as of December 2004, Farhat was completely disabled, dementia, etc.

As noted, Hartford specifically rejected Farhat's treating physician, Dr. Higgins' December 2004 letter as unsupported by medical information.  Further, it did not even address the evidence from neuropsychologist Dr. Horstman.

The court finds that Hartford's determination that Farhat had not shown an HIV-related cognitive impairment as of April 4, 2004 is clearly erroneous.  There is sufficient evidence in the record that Farhat's cognitive impairments existed as of that date, and even, in all likelihood, prior to April 4, 2004.  Hartford's arguments that Farhat either abandoned these impairments as a source of disability or that he was "cured" of any disabling symptoms are not persuasive.

This does not end the inquiry because the court must then consider whether Hartford abused its discretion in rejecting Farhat's treating physicians' opinions that he was disabled by the cognitive impairments as of April 4, 2004.

The court finds that Hartford's characterization of Dr. Higgins' opinion regarding Farhat's disability as insufficiently supported by medical evidence was clearly erroneous.  As discussed above, Dr. Higgins' April 4, 2004 letter was indeed supported by his prior records, Dr. Horstman's reports, and other evidence in the file demonstrating that Farhat was disabled by his HIV-related cognitive impairments.

Unlike social security cases, the law is clear that in ERISA cases, plan administrators are *not* required to accord any special deference to the opinions of a claimant's treating physician – in this case, Drs. Higgins and Horstman.  *Nord*, 538 U.S. at 829-831 (rejecting Ninth Circuit holding that plan administrator must articulate specific reasons for rejecting a treating physician's opinion); *Jordan*, 370 F.3d at 878-79.[3]  "Nor

---

[3]In discussing Hartford's treatment of Higgins' and Horstman's opinions, both parties here cite to this court's November 2005 order determining the standard of review as abuse of discretion.  In that order, the court found that the existence of a conflict of interest was a close

United States District Court

For the Northern District of California

1    does [ERISA] impose a heightened burden of explanation on administrators when they

2    reject a treating physician's opinion."  *Id.*  Instead, a treating physician's opinion "can be

3    rejected *on the basis of reliable evidence* with no discrete burden of explanation."  *Id.*

4    (emphasis added).

5         However, the Court added in *Nord* that "[p]lan administrators, of course, *may not*

6    *arbitrarily refuse to credit a claimant's reliable evidence*, including the opinions of a treating

7    physician."  *Id.* at 834 (emphasis added).  In further explanation, the Court, implied that in

8    refusing a claimant's reliable evidence, the plan administrator should themselves be

9    "credit[ing] reliable evidence that conflicts with a treating physician's evaluation."  *Id.*

10        In all of the Supreme Court and Ninth Circuit cases upholding the rejection of the

11   treating physicians' opinions, other contradictory reliable evidence existed.  *See Jordan*,

12   370 F.3d at 878-79 (treating physicians failed to respond to plan administrator's repeated

13   requests for additional medical evidence, and defendant Metlife's reviewing physician's

14   reports contradicted plaintiff's treating physicians); *Taft v. Equit. Life Insur.*, 9 F.3d 1469,

15   1473 (9th Cir. 1994) (plan administrator had evidence from another physician that plaintiff's

16   injuries did not result in a disability); *Nord*, 538 U.S. at 822 (Metlife referred plaintiff to

17   neurologist for independent examination, and doctor opined contrary to plaintiff's treating

18

19   call with respect to Hartford's failure to mention Dr. Horstman's reports in its March 8, 2005
20   denial.  *Id.* at 16.  The court noted the standards set forth by the Ninth Circuit in its decision
     in *Abatie v. Alta Health & Life Ins. Co.*, 421 F.3d 1053, 1059 (9th Cir. 2005).  It further found
21   that: "Dr. Horstman's report can not be characterized as non-dispositive."  To the contrary, the
     court found that the "report detailed a battery of tests that Dr. Horstman administered to
22   Farhat, and a well-documented, well-supported conclusion that Farhat was unable to work
     based on his HIV-related conditions."  Order at 16.  However, the court relied on the Ninth
23   Circuit's holding in *Abatie*, that "where an ERISA administrator states that it considered the
     record '*as a whole*,' [the court] must assume that it did so, in the absence of clear and
24   convincing evidence to the contrary."  *Id.* at 1063 (emphasis added).  Because Hartford had
     indeed stated that it considered the record as a whole, the court held that, pursuant to *Abatie*,
25   that Farhat had not presented clear and convincing evidence that Hartford did not consider the
     record as a whole, including Dr. Horstman's evidence.  Order at 16.

26        Since this court's November 2005 order, the Ninth Circuit voted to hear *Abatie* en banc
     and withdrew the decision relied on by this court.  *See* 437 F.3d 860 (9th Cir. Feb. 6, 2006).
27   Therefore, in considering the instant summary judgment motions, the court has not relied on
     the withdrawn *Abatie* decision.
28

United States District Court

For the Northern District of California

physician, that plaintiff could perform sedentary work).  Here, there is no dispute that Hartford did not rely on other contradictory evidence; it simply dismissed Dr. Higgins' December 2004 opinion as insufficient based on the absence of supporting medical evidence.  Moreover, Hartford did not even bother to dismiss Dr. Horstman's report, failing to mention it at all.  The question, therefore, is whether such rejection was arbitrary and capricious, or in the words of the Supreme Court, an arbitrary refusal to credit Farhat's evidence.

The court finds that Hartford did indeed arbitrarily refuse to credit Dr. Higgins' and Dr. Horstman's December 2004 evidence.  *See Taraban v. LVMH*, Pl. RJN, Exh. A, at 6 (court granted summary judgment for the plaintiff in an ERISA case, finding an abuse of discretion for defendant to reject plaintiff's treating physicians' evidence that she was rendered disabled by fibromyalgia "without so much as seeking an independent medical examination") (citing *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914 (7th Cir. 2003); *Cook v. Liberty Life Assurance Co.*, 320 F.3d 11 (1st Cir. 2003); *Barnett v. Kaiser Found. Health Plan*, 32 F.3d 413, 416 (9th Cir. 1994)).  Moreover, not only is Hartford's refusal to credit Farhat's evidence an abuse of discretion under controlling case law, but it is also contrary to its Plan for Hartford to simply reject the physicians' opinions without having consulted a medical professional.  As set forth above, the Plan required Hartford:

> When deciding an appeal that is based in whole or in part on medical judgment, we will consult with a medical professional having the appropriate training and experience in the field of medicine involved in the medical judgement and who is neither an individual consulted in connection with the initial benefit decision, nor a subordinate of such individual.

POL042.

It was particularly important for Hartford to consult a medical professional who could have shed light on and perhaps explained the correlation between cognitive impairment and depression – how depression could have been and is frequently misdiagnosed.  Also, a medical provider could have provided some basis for the court to reject Dr. Horstman's

ability to date the impairment back to a time before he had seen Farhat.

Additionally, as noted above, the Plan specifically required Hartford to consider *all* evidence – including that submitted only on appeal.  Thus, the fact   that Dr. Horstman's report was submitted on appeal only could not have provided justification for any failure to consider the evidence on Hartford's part.  *See* POL042.

For these reasons, Hartford also abused its discretion by construing provisions of the Plan in a way that clearly conflicted with the plain language of the Plan.  *See Canseco*, 93 F.3d at 606.

### CONCLUSION

For the reasons set forth above and on the record at the May 31, 2006 hearing, the court DENIES Hartford's motion for summary judgment, GRANTS Farhat's motion for summary judgment, and remands to Hartford for an award of benefits.  This order fully adjudicates the motions listed at Nos. 38 and 42 of the clerk's docket for this case and terminates all other pending motions.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 9, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge

23