**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI J. FARHAT, | |
| Plaintiff, | No. C 05-0797 PJH |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS** |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY and PRICEWATERHOUSECOOPERS HEALTH AND WELFARE BENEFIT PLAN, | |
| Defendants. | |

Plaintiff Ali Farhat's ("Farhat") motion for attorney's fees came on for hearing before this court on August 16, 2006. Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, the court GRANTS IN PART and DENIES IN PART Farhat's motion for the reasons stated on the record and for those that follow.

**BACKGROUND**

This is a case brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., challenging defendants' denial of payment of long-term disability ("LTD") benefits. On June 6, 2006, this court granted Farhat's motion for summary judgment, and denied defendants' motion for summary judgment. The parties were able to agree on the amount of back benefits due Farhat, but were unable to agree on attorney's fees.

**DISCUSSION**

A.  Legal Standard

ERISA authorizes "the court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). Because ERISA is "remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans," a prevailing ERISA plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). "As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee 'if they succeed on *any* significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In *Hummell v. Rykoff*, the Ninth Circuit set forth five factors that the court may consider in determining whether to award fees and costs, including: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. 634 F.2d 446, 453 (9th Cir. 1980). "No one of the *Hummell* factors . . . is necessarily decisive, and some may not be pertinent in a given case." *Smith*, 746 F.2d at 590.

If the court finds that an award of fees is appropriate, then it calculates attorney's fees under § 1132(g)(1) "using a hybrid lodestar/multiplier approach." *McElwaine v. U.S. West*, 176 F.3d 1167, 1173 (9th Cir. 1999) (citing *D'Emanuele v. Montgomery Ward*, 904 F.2d 1379, 1383 (9th Cir. 1990)). First, "to calculate the 'lodestar' amount, [the court] multipl[ies] the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate, raising or lowering the lodestar according to the factors identified

by this circuit." *Id.*; *see also Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

In *Hensley*, the Supreme Court set forth eleven factors relevant in calculating the lodestar figure: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the undesirability of the case; (1) the nature and length of the professional relationship with the client; and (11) awards in similar cases.  461 U.S. at 430 n.3.

As for the hourly rate, the Ninth Circuit instructs district courts to use "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. Los Angeles,* 796 F.2d 1205, 1211 (9th Cir. 1985).  The Ninth Circuit has held that the district court may compensate for a delay in payment either by applying attorney's current rates to all hours billed during the course of litigation, or by using attorney's historical rates and adding a prime rate enhancement. *See In re Washington Public Power Supply Sys. Secs. Litigation*, 19 F.3d 1291, 1305 (9th Cir. 1994); *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1010 (9th Cir. 2002).

Second, "a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Gerwen*, 214 F.3d at 1045.  Enhancement multipliers are not allowed for contingency fee arrangements in ERISA cases; thus, in those cases, fees must be calculated using only the lodestar method. *McElwaine*, 176 F.3d at 117374.  "The lodestar amount is presumptively the reasonable fee amount, and a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Gerwen*, 214 F.3d at 1045.  A district court

3

should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.*

B.     Plaintiff's Motion

     1.     Parties' Arguments

In his opening brief, Farhat argues that his attorneys are entitled to recover reasonable attorney's fees and costs under the five *Hummell* factors.    634 F.3d at 453. He contends that the hours expended on the case, the attorney's hourly rates, and the costs are reasonable. Additionally, Farhat requests pre-judgment interest. In support, Farhat submitted two declarations from Lewis, Feinberg, Renaker & Jackson ("LFRJ") partner Teresa Renaker, a declaration from LFRJ partner Jeffrey Lewis, LFRJ's records of fees and costs (exhs. A, B, C, and I to Renaker Decl.), a declaration from partner Steven Tindall of Lieff, Cabraser, Heimann & Bernstein submitted by LFRJ in another ERISA case in support of the reasonableness of LFRJ attorney's rates (exh. D to Renaker Decl.), exhibits demonstrating that defendants Hartford and PWC are able to pay the fees (exhs. E, F to Renaker Decl.), and a declaration from Mary Signorelle, a prior co-chair of the American Bar Association's Employee Benefits Committee. [1]

In opposition, defendants do not contest plaintiff's entitlement to reasonable fees under section 502(g) or under *Hummell.* Nor do defendants argue that special circumstances exist precluding an award of fees. Instead, defendants argue that the fees requested are unreasonable for a number of reasons, that LFRJ's hourly rates are unreasonable, that some of the costs are not recoverable, and that the fees and costs requested should be adjusted downward. Defendants also argue that Farhat is not entitled to pre-judgment interest in the amount he has requested. Finally, defendants contend that plaintiff's motion is premature since they have filed an appeal. They request that the court stay any fee award pending appeal.

In reply, Farhat responds to defendants' specific arguments regarding the

---

[1]Defendants' objections to the Signorelle Declaration are OVERRULED.

4

reasonableness of the fees and the rates.  He asserts that he is entitled to $106,456.25 in fees, $2,443.60 in costs, and $11,912.45 in pre-judgment interest.

2. Analysis

a. Attorney's Fees and Costs

Because defendants concede that plaintiff prevailed and is entitled to reasonable attorney's fees, this court need not engage in a discussion of the five *Hummell* factors. What follows are defendants' objections to the hours expended by plaintiff's counsel for certain tasks, and the court's resolution.

i. Hours

*Standard of Review Motion*

Plaintiff claims 72.5 hours of preparation associated with his opposition to defendants' motion in support of a discretionary standard of review.  Defendants argue that because they were successful on the standard of review motion, plaintiff should not be compensated for the hours spent by his attorneys on the motion.  They note that there was not even a hearing on the motion.  In reply, Farhat argues that it is inappropriate to reduce LFRJ's fees simply because he did not prevail on *all* issues in the case.  *See Hensley*, 461 U.S. at 434 ("a fee award should not be reduced merely because plaintiffs fail to prevail on every contention raised in the lawsuit").

Although the court may exclude fees that are excessive, redundant, or otherwise unnecessary, the court finds that the hours incurred in an effort to have the court impose a *de novo* standard of review were neither unnecessary nor excessive.  Because the discretionary standard of review is highly deferential to the plan administrator in ERISA cases, plaintiffs generally seek to establish that review should be *de novo*.  As long as there is a good faith argument to be made in support of such a request, the court would be hard pressed to find that a plaintiff like Farhat should be deterred from even attempting to prevail on this issue.  *See, e.g., Aguirre v. Los Angeles Unified School Dist.*, 2006 WL 2473479 at *6 (9th Cir. Aug. 29, 2006) (acknowledging that the *Hensley* standard "is broad

5

enough, in appropriate cases, to permit an award of full fees even where a party did not prevail on every contention"). The motion required significant development of the facts related to Farhat's disabilities and medical treatment, the Plan at issue, and the administrative record and appeal. Although defendants were ultimately successful, it was by no means a slam dunk for them and the allegation of the administrator's conflict of interest was a fairly close call.

The fact that no hearing was held is of no consequence. The court determined that the parties had satisfactorily briefed the issues and no hearing was necessary. In his opposition to defendants' motion, Farhat was required to brief all of the relevant legal issues, submit a large administrative record, and submit all of his other exhibits and declarations. His counsels' work product was and is of high quality.

Accordingly, the hours expended on this motion will not be reduced.

*Research re: Jury Trial Issue*

Farhat claims 16.2 hours for research related to his entitlement to a jury trial. Defendants argue that the research was unnecessary, and point to the court's decision at the case management conference not to allow any briefing on the issue. In reply, Farhat argues that the research was appropriate because the Ninth Circuit's decision that this case must be tried to the court has been called into question by a later Supreme Court case.

Because the court agrees that the time LFRJ spent on this task was unnecessary given a Ninth Circuit decision directly on point, the fee request will be reduced by 16.2 hours.

*Research re: Capacity to Sue*

The fee request also includes time spent researching a capacity to sue issue under Federal Rule of Civil Procedure 17(c). In reply, plaintiff concedes that those hours were billed to this case in error.

Accordingly, the fee request will be reduced by 4.9 hours.

*Discovery*

LFRJ also spent 1.5 hours preparing discovery requests, which defendants claim was unnecessary and should be reduced. Plaintiff replies that under *Hensley*, the court should allow the discovery, which he claims was part of his opposition to defendants' standard of review motion.

Because the court denied plaintiff's motion to conduct discovery, it finds that the time spent preparing discovery requests was unnecessary and unreasonable and reduces the fee request by 1.5 hours.

*Mediation Brief and Attendance at Mediation*

The parties participated in a mediation on December 1, 2005. Defendants argue that the 49.4 hours that LFRJ spent drafting the mediation statement, at a cost of $13,847.25, was excessive and should be cut in half. Defendants also contend that it was unreasonable for plaintiff to send two attorneys to the mediation, partner Teresa Renaker, and third-year associate Claire Kennedy-Wilkens, and to bill for travel and attendance time for both, at the cost of $3,697.50 and $2007.50, respectively.

In reply, plaintiff relies primarily on the court's decision in *Fleming v. Kemper Nat'l Services* on the very issue. 373 F.Supp.2d 1000, 1009 (N.D. Cal. 2005) (Chesney, J.). The defendant in that case made the same arguments made by defendants here. The *Fleming* court found that the attorney's time spent preparing for the settlement conference was reasonable and that there were benefits to having both a senior and a junior attorney in attendance at the conference.

Contrary to the *Fleming* court, however, this court finds that the time LFRJ billed for mediation-related work was excessive. It is true that because the junior attorney bills at a lower hourly rate, it is less expensive than having the senior attorney expend the same number of hours preparing the mediation statement. However, it is also true that the more senior attorney, here Ms. Renaker, could have undoubtedly prepared the statement in far fewer hours because of her vast experience in this area. Moreover, the attendance of the

mediation by two attorneys is neither required nor encouraged by this court's ADR Local Rules; the only requirement is that lead counsel attend. This requirement necessarily contemplates that lead counsel will be sufficiently familiar with the facts and supporting evidence to be effective.

Accordingly, the fee request will be reduced by 24.7 hours for preparation time and by 8.5 hours for the attendance of Ms. Kennedy-Wilkins at the mediation.

*Cross-Motions for Summary Judgment*

Farhat's counsel spent 87.9 hours and billed $28,666 in fees in conjunction with the cross-motions for summary judgment. Defendants argue that these fees should be cut in half. In support, defendants cite *Fenberg v. Cowden Automotive LTD Plan*, 2006 WL 83053 (N.D. Cal. 2006). Plaintiff replies that *Fenberg* is an inapposite comparison. He notes that the cross-motions in this case involved three lengthy briefs and a complicated factual record. He further notes this court's 23 page order, and comments in the order that the case was "troublesome" and "difficult."

The decisions of other district courts in other ERISA cases are of limited assistance given that all of the cases are factually distinguishable on several levels. For instance, in *Fenberg*, the court reduced plaintiff's attorney's 29.3 hours spent on summary judgment motions by 6.3 hours to 23 hours, which included time for preparing the "relatively brief" summary judgment motion and appearing at the hearing. 2006 WL 83053 at *3. On the other hand, in *Fleming*, the court approved 79.8 hours expended by plaintiff's counsel on summary judgment motions which included argument on the standard of review. 373 F.Supp.2d at 1007-08.

In *Attia v. Unum Life Insurance,* the district court granted plaintiff's attorney's fees in the amount of $38,415 plus $1004.50 in costs. 2002 WL 392466 (C.D. Cal. 2002). In that case, the parties settled after plaintiff filed its motion for summary judgment. *Id.* at *4. In another case, *Mogck v. Unum Life Insurance*, 289 F.Supp.2d 1181 (S.D. Cal. 2003), plaintiff's attorneys spent over 200 hours on cross-motions for summary judgment, and the

8

court held that it was reasonable. *Id.* at 1192.

Here, the court finds that the time spent by LFRJ on the cross-motions for summary judgment was reasonable, and was not "excessive, redundant, or otherwise unnecessary." *Gerwin*, 214 F.3d at 1045. The summary judgment briefs were thick, dealt with relatively complicated issues, and the parties submitted numerous exhibits and declarations. The court found plaintiff's submissions to be of a high quality and helpful to resolution of the issues in the case.

Accordingly, the hours expended on these motions will not be reduced.

*Unsupported Time Entries*

Defendants also take issue with four specific time entries. In reply, plaintiff agrees that the fee award should be reduced to omit the first three entries, which represent 1.1 hours of time, for a total fee of $262.75.

The fourth entry for 2.4 hours is an August 3, 2005 entry by "RS," stating "finished memo to T. Renaker and C. Kennedy-Wilkins re: effect of LTD policy exclusion language." Defendants assert that they are unable to discern how the entry relates to any issues raised in the litigation. Plaintiff replies that Hartford had suggested that Farhat's benefits might be subject to the Plan's 24-month limitation on benefits for mental illness. He argues that it was reasonable for his counsel to research the potential effect of the exclusionary language on his claim. The court agrees.

The fee request is reduced by 1.1 hours.

*Attorney's Fee Motion*

Defendants contend that LFRJ's asserted 30 hours to prepare an attorney's fees motion is excessive and should be reduced. However, defendants do not specify the reduction they seek. In reply, plaintiff asserts that LRFJ's hours are reasonable, and that because of the time expended preparing the reply, their hours have actually increased to 41.25 hours. Plaintiff notes that LFRJ had to spend unanticipated time briefing the 11-factor test related to multipliers despite the fact that it did not seek a multiplier in this case

9

(discussed below).

Given the numerous legal and factual issues raised by this motion, and the evidentiary support required, the court finds LFRJ's time related to this motion reasonable.

### ii. Hourly Rates

Plaintiff billed for three attorneys and two law clerks. Named partner Teresa Renaker billed at an hourly rate of $435; third year associate Claire Kennedy-Wilkins was billed out at $295/hour; first year associate Ms. Nako at $260/hr; and the law clerks at $180/hr. Plaintiff argued in his opening motion that the experience, skill, and reputation of counsel support the rates. In support, he submitted a declaration from Signorelle, that LRFJ is "one of the leading plaintiff's ERISA litigation firms in the country." Plaintiff also submitted a declaration from Lieff Cabraser partner, Steven Tindall, demonstrating that LFRJ rates are in line with those of other firms in the Bay Area. Additionally, plaintiff cites to several district court decisions that have approved similar rates.

Defendants argue that all of Farhat's counsels' rates are unreasonable. They argue generally that the rates have been enhanced by a contingency multiplier, which is not allowed in ERISA cases. *See Cann v. Carpenters' Pension Trust Fund,* 989 F.2d 313, 318 (9th Cir. 1993). They contend that LFRJ's rates should "top out" at $250/hr for Ms. Renaker – as opposed to the requested $435/hr. *See Welch v. Metropolitan Life Ins. Co.*, 04-00084 (C.D. Cal. 2004). Additionally, they argue that LRFJ has clearly inflated their rates, and note that in *Fleming*, a third year associate's rate was $225; and a first year associate's rate was $200. Moreover, defendants assert that plaintiff has not demonstrated that the law clerks are entitled to be billed out at any more than $155/hour. Finally, defendants contend that LRFJ cannot compare its rates with those of Lieff, Cabraser, which specializes in class actions, because this is not a class action.

In reply, plaintiff admits that LFRJ represents him on a contingency fee basis, but contends that their rates reflect the prevailing market rate and do not include a contingency multiplier. Plaintiff further contends that the case cited by defendants is not persuasive or

10

applicable here, noting that in the Central District's decision in *Welch*, the court found that the attorneys there could not support the hourly rates charged because they had never charged them to paying clients, which was contrary to Ninth Circuit law. Additionally, he emphasizes that contrary to defendants' implication, LFRJ was not involved in the *Welch* case, and that unlike the attorneys in that case, it is not requesting a contingency multiplier.

In support of Ms. Renaker's $435/hr rate, she has submitted a declaration that she has another paying client paying her current 2006 rate of $435/hr. *See* Suppl. Renaker Decl. Additionally, she notes that Judge Ware recently approved a $495/hr rate for another named partner at LFRJ, Daniel Feinberg. *See* Exh. 1, Renaker Suppl. Decl. In her original declaration, she sets forth her experience, activities, and publications in the ERISA field.

As for Ms. Wilkins' $295 hourly rate, plaintiff notes that the $225 rate in the *Fleming* case, cited by Farhat, represented a 2004 rate as opposed to a 2006 rate. Plaintiff also notes that in Judge Ware's recent order, he also approved a $295/hr rate for Ms. Kennedy-Wilkins.

Ms. Renaker's original declaration also sets forth the background and education for first-year associate Lindsay Nako and the two law clerks who worked on the case. She attests that $260/hr is Ms. Nako's "customary hourly rate," and that the $180/hr law clerk rate is "within the prevailing market rate." Additionally, Judge Ware's recent decision also approved $180/hr for law clerks at LFRJ. *See* Exh. 1, Renaker Suppl. Decl.

As noted above, the hourly rate is determined based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers,* 796 F.2d at 1211. Farhat is correct that where the plaintiff submits affidavits from plaintiff's attorney and from other attorneys "regarding prevailing fees in the community, and rate determinations in other cases," the Ninth Circuit has implied that defendants cannot simply disagree with this evidence, but should "support their arguments with any affidavits or evidence of their own regarding legal rates in the community." *See United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, the evidence does not establish that there is one prevailing rate, but instead suggests an appropriate range of rates for ERISA work charged by attorneys with comparable experience. The declarations and relevant case law establish a range for experienced partners from approximately $400/hour to $495/hour. *See* Exh. 1, Renaker Suppl. Decl.; *Udd v. Vidinsky*, 04-5080 JW (approving $495/hr for LFRJ partner, Daniel Feinberg); *May v. Metropolitan Life Ins.*, 2005 WL 839291 (N.D. Cal. 2005) (noting evidence that prevailing rate for partner-level ERISA attorneys in Bay Area is between $425 and $450/hr; and that associates are billed at $225/hr); *Fenberg v. Cowden*, 2006 WL 83053 (N.D. Cal. 2006) (approving rate of $400/hr for ERISA attorney who had significantly less ERISA litigation experience that LFRJ partner, Daniel Feinberg); *Fleming*, 373 F.Supp.2d at 1010 (approving $450/hr for LFRJ partner, Daniel Feinberg, $225 and $200/hr for associates and $125/hr for law clerks in 2004). Given Ms. Renaker's experience, her requested rate of $435/hour is within the prevailing rate range. The court also finds that the $295/hour and $260/hour rates for the third and first-year associates, respectively, are within the prevailing rate ranges.

However, as for the $180/hour rate requested for the LFRJ law clerks, the court is not persuaded that the rate is within the prevailing rate range. The only support for such rate is based on one case - a class action at that. That single approval is insufficient to set the prevailing rate in this ERISA case. Accordingly, the court will reduce the law clerk's hourly rate to the rate it finds to be prevailing – $155/hour.

At the August 16, 2006 hearing, the court questioned the parties regarding the propriety of charging 2006 rates for work completed in 2005. Both parties submitted supplemental briefs on the issue. Farhat included a number of distinguishable out of circuit cases in his brief in support of a 2006 rate.[2]  Without citing any authority, defendants argue that it is within this court's discretion "to apply rates that the court finds to be reasonable in

---

[2] The only Ninth Circuit case cited by plaintiff, *Romberg v. Nichols*, 953 F.2d 1152 (9th Cir. 1992), is of no help since it was subsequently vacated. *See Romberg v. Nichols*, 993 F.2d 1453 (9th Cir. 1993).

12

the year when the work was actually performed" and that the court need not "choose between applying current rates or historic rates with an interest adjustment."

Since LFRJ has not been paid contemporaneously with their work, and based on Ninth Circuit authority, the court will apply current 2006 rates in this case. *See In re Washington Public Power Supply Sys. Secs. Litigation*, 19 F.3d at 1305; *Fischel*, 307 F.3d at 1010. It further notes that a good portion of the work in this case, including that related to the cross-motions for summary judgment and the attorney's fees motion, was nevertheless actually performed in 2006.

### iii. Lodestar Generally/Eleven-Factor Test

In addition to their specific arguments regarding particular tasks and fee entries as set forth above, defendants also argue generally that the lodestar should be reduced downward based on the eleven factor test set out in *Hensley* and *Gerwen* because: (1) plaintiff's documentation is contradictory and inadequate, the case was overstaffed and double-billed, and many of the hours are excessive; (2) the issues in the case were neither novel nor difficult, and had been briefed on prior occasions; (3) not all of the work was required to be done by an experienced attorney; (4) there is no evidence that the attorneys were precluded from any other employment due to this case; (5) the fees charged were not customary; (6) there is no evidence of emergency or hurried time in this case; (7) many of the issues worked on and briefed by counsel were unnecessary or did not obtain favorable results; (8) the case was not undesirable; (9) there is no evidence of a relationship with the client in this matter that would involve greater fees incurred than normal; and (10) there is no evidence of similar cases with similarly large awards. *See Gerwen*, 214 F.3d at 1045. Defendants, however, omitted discussion of LFRJ's experience, reputation and ability, which is also one of the *Hensley* factors.

Because the issue was raised first in defendants' opposition, Farhat did not address it until his reply. The time, labor, and customary fees issues have already been addressed above. Additionally, Farhat notes: (1) that LFRJ kept contemporaneous time records, did

13

not "blockbill," and billed in increments of three minutes; (2) that the issues were indeed difficult and unique; (3) that a high degree of knowledge and skill in ERISA law was required; (4) that the case did require significant time that could have been devoted to hourly-paid work; (5) that since Farhat had received no benefits at the time of the suit, his situation required LFRJ to do everything it could to move the case along expeditiously; (6) that defendants abused their discretion; (7) that defendants must concede LRFJ's reputation and skill; (8) that the Signorelle Decl. submitted with plaintiff's papers establishes that "very few attorneys are willing to represent *participants* in ERISA cases"; (9) that there was no past relationship with Farhat; and (10) that defendants have not suggested any other cases where a downward multiplier was applied.

As noted above, "[t]he lodestar amount is presumptively the reasonable fee amount, and a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Gerwen*, 214 F.3d at 1045. Because defendants have not demonstrated that this is the rare or exceptional case that requires a downward adjustment to the lodestar, the court declines to make a downward adjustment.

                iv.    Costs

The parties agree that plaintiff is entitled to $340.80 in costs, which includes the filing fee and service of the complaint. They dispute whether or not plaintiff is entitled to an additional $1,842.20 in photocopying costs. *See* Renaker Suppl. Decl. at 4. Defendants cite L.R. 54-3(d)(3), which provides that "[t]he cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not allowable." Defendants suggest that because this was an efiling case, reproductions were not necessary. Plaintiff notes in reply that many documents were not electronically filed, but were filed under seal – including Farhat's medical records. Additionally, plaintiff had to provide the court with a photocopies of the administrative record, which was large.

14

Plaintiff, however, has entirely failed to substantiate the requested photocopying costs, but has simply listed the aggregate photocopying costs incurred by month. *See* Renaker Suppl. Decl. at Exh. 4. Therefore, even if this court was inclined to allow certain photocopying costs, it is unable to discern the amount of allowable expenses. Given that such costs are generally prohibited by L.R. 54-3(d)(3), and plaintiff's lack of specificity, plaintiff's request for the photocopying costs is DENIED. Accordingly, plaintiff is entitled only to the agreed upon $340.80 in costs, which includes the filing fee and service of the complaint.

### b. Pre-judgment Interest

Whether to award pre-judgment interest "is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Shaw v. International Assoc. of Machinists*, 750 F.2d 1458 (9th Cir. 1985). Appropriate considerations include whether the "financial strain of paying pre[-]judgment interest would injure other plan beneficiaries, and whether the defendants acted in bad faith." *Id.*; *see also Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974, 988 (9th Cir. 2001). "Although a defendant's bad faith conduct may influence whether a court awards pre[-]judgment interest, it should not influence the rate of interest." *Id.* "[T]he interest rate proscribed for post-judgment interest under 28 U.S.C. §1961 is appropriate for fixing the rate of pre[-]judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Grosz-Salomon,* 237 F.3d at 1164.

Farhat seeks pre-judgment interest in the amount of $11,912.45 on the past due benefits of $119,340.95, representing compound interest at the federal post-judgment rate of 5.03% to be compounded monthly. He argues that the court should award interest because Hartford handled his claim in bad faith by arbitrarily rejecting reliable evidence, relying on clearly erroneous findings of fact, and by failing to adhere to the language of the Plan. He further contends that defendants are financially able to pay pre-judgment interest.

15

In opposition, defendants do not really address whether plaintiff is entitled to pre-judgment interest, including Farhat's allegations of bad faith, but merely state that such an award is discretionary. Defendants agree, however, that if interest is awarded, it should be at a rate of 5.03%. However, they argue that interest should not be compounded monthly but instead annually, pursuant to 28 U.S.C. § 1961. Defendants also argue that the amount of interest should not be determined until after the appeal has concluded.

In reply, Farhat acknowledges that his request that interest be compounded monthly is not provided for by § 1961, which permits only annual compounding. However, he asserts that the equities of this case require a greater rate than that set by § 1961.

The court concludes that the equities require an award to Farhat of pre-judgment interest. Additionally, there is sufficient evidence that defendants are able to satisfy an award of pre-judgment interest. However, as for the amount of the interest, there is no substantial evidence that the equities of this case require a different rate than the annual compounding provided by § 1961. *See Grosz-Salomon,* 237 F.3d at 1164.

        c.      Defendants' Request for Stay

For the reasons stated on the record, defendants' request to stay payment of plaintiff's benefits pending appeal is DENIED. Defendants were ordered at the August 16, 2006 hearing to pay plaintiff's benefits within ten days. However, in light of plaintiff's counsel's non-opposition, payment of the attorney's fees and costs ordered herein is STAYED pending appeal.

**CONCLUSION**

For the reasons set forth above, the court GRANTS IN PART and DENIES IN PART plaintiff's motion for attorney's fees and costs. Because plaintiff's papers and exhibits were not submitted in a manner that enables the court to accurately provide totals based upon allowed hourly rates and hours expended, the court has set forth the hours allowed. The court GRANTS plaintiff's motion for attorney's fees as follows:

(1)      72.5 hours re: the standard of review motion;

    (2)    24.7 hours for preparation re: mediation and 8.5 hours for Ms. Renaker's attendance;

    (3)    87.9 hours re: the cross-motions for summary judgment;

    (4)    2.4 hours re: the allegedly unsupported time entries;

    (5)    41.25 hours re: the attorney's fees motion.

Plaintiff's requested fees are, however, reduced as follows:

    (1)    16.2 hours re: research regarding the jury trial issue;

    (2)    4.9 hours re: research regarding plaintiff's capacity to sue;

    (3)    1.5 hours re: discovery;

    (4)    1.1 hours re: the unsupported time entries; and

    (5)    24.7 hours re: mediation preparation and 8.5 hours for Ms. Kennedy-Wilkens' attendance at the mediation.

As for costs, plaintiffs are entitled to $340.80. The court disallows the requested $1,842.20 in photocopying costs.

In addition, the court GRANTS plaintiff's motion with respect to the 2006 hourly rates requested with the exception of the time billed by law clerks. The court finds that the prevailing law clerk rate is no greater than $155/hour. Plaintiff's attorneys are entitled to bill for their 2006 rates for all work performed.

The court GRANTS plaintiff's motion for pre-judgment interest on the agreed past due benefits at a rate of 5.03% to be compounded annually.

Defendants' request for a stay of payment of benefits is DENIED. Payment of attorney's fees and costs is STAYED pending appeal.

**IT IS SO ORDERED.**

Dated: August 30, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge